## 41588. ALDERMAN v. THE STATE.
(327 SE2d 168)

WELTNER, Justice.

This is a death penalty case. In 1975, the appellant, Jack Alderman, was convicted in Chatham County for the murder of his wife and sentenced to death. On direct appeal, this court affirmed. *Alderman v. State,* 241 Ga. 496 (246 SE2d 642) (1978). Alderman subsequently obtained federal habeas relief as to sentence on the ground that three prospective jurors had been excused erroneously under *Witherspoon v. Illinois,* 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). *Alderman v. Austin,* 695 F2d 124 (5th Cir., Unit B 1983) (en banc). Thereafter, another sentencing trial was conducted by Chatham County, and Alderman again was sentenced to death. He now appeals.[1]

1. In his 6th enumeration of error, Alderman complains of the trial court's denial of his challenge to the array of the grand jury which returned the indictment in this case back in 1975.

We find no merit to this enumeration. The year 1984 is too late to raise, for the first time, a challenge to a 1975 grand jury array. *Walraven v. State,* 250 Ga. 401 (297 SE2d 278) (1982); *Young v. State,* 232 Ga. 285 (206 SE2d 439) (1974).

2. The practice of death-qualification of jurors is not unconstitutional for any reason urged. *Mincey v. State,* 251 Ga. 255 (2) (304 SE2d 882) (1983); *Thomas v. State,* 245 Ga. 688 (266 SE2d 499) (1980). Nor do we find any merit to Alderman's contentions that the manner in which the death penalty is imposed in Georgia is unconstitutional. His 8th and 9th enumerations are meritless.

3. In his 7th enumeration, Alderman complains of the limitations placed by the trial court upon the defense voir dire. We find from our examination of the transcript that both parties were given "an opportunity to ascertain the ability of the prospective jurors to decide the case on its merits, with objectivity and freedom from bias and prior inclination." *Waters v. State,* 248 Ga. 355, 363 (3) (283 SE2d 238) (1981).

The trial court did not err by refusing to allow Alderman to ask veniremen what kinds of books and magazines they read; whether they were members of any political organization; what kinds of bumper stickers they had on their automobiles; whether they had read anything about the reliability of hypnosis; whether they had ever

---

[1] The re-sentencing trial began in Chatham County on March 26, 1984 and the jury reached its verdict on March 31, 1984. Alderman filed a motion for new trial on April 11, 1984, and filed an amendment thereto on August 24, 1984. The motion was denied August 27, 1984. A notice of appeal was duly filed and the the case was docketed in this court on September 27, 1984. Oral arguments were heard November 14, 1984.

expressed an opinion about other criminal cases; whether, if Adolph Hitler were on trial for killing 6,000,000 Jews, they could give him the death penalty; whether a juror who previously had served in a criminal case had been the foreman; and whether any juror had ever been the foreperson of a grand jury. *Henderson v. State*, 251 Ga. 398 (1) (306 SE2d 645) (1983).

4. In his 13th enumeration, Alderman contends that jurors were erroneously excused for opposition to the death penalty, contrary to the standards of *Witherspoon v. Illinois*, supra.

Alderman argues that the proper test for the excusal of jurors opposed to the death penalty is contained in footnote 21 of the *Witherspoon* opinion in which the court stated: "[N]othing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt*." 391 U. S. at 522-23.

We have formerly recognized this as the standard for excusing a prospective juror for opposition to capital punishment. It is now clear, however, that the oft-cited footnote no longer holds. The standard for disqualification now is "whether the juror's views [on capital punishment] would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, ___ U. S. ___ (slip op., p. 11) (105 SC 844, 83 LE2d 841) (1985), quoting *Adams v. Texas*, 448 U. S. 38, 45 (100 SC 2521, 65 LE2d 581) (1980).

This standard is not transgressed if the juror merely expresses "qualms" about capital punishment (*Witherspoon*, supra, 391 U. S. at 513) or acknowledges that the possible imposition of the death penalty might affect his deliberations in the sense that he would take his duties more seriously than otherwise he might. *Adams v. Texas*, supra. However, "the requirement that a juror may be excluded only if he would never vote for the death penalty is now missing; . . . whether or not a venireman might vote for death under certain *personal* standards, the State still may properly challenge that venireman if he refuses to follow the statutory scheme and truthfully answer the questions put by the trial judge." *Wainwright v. Witt*, supra at 8-9.

Applying this test to the facts of this case, we conclude that the trial court did not err by excusing six jurors who were opposed to the

death penalty.[2]

5. In his 14th enumeration, Alderman contends that the trial court erred by refusing to sustain defense challenges to two prospective jurors who, he contends, were biased in favor of the death penalty. We disagree. The answers of these two jurors failed to show that their views on capital punishment would prevent or substantially impair their ability to decide the question of sentence in accordance with the instructions of the court. *Wainwright v. Witt,* supra; *Godfrey v. Francis,* 251 Ga. 652 (11) (308 SE2d 806) (1983).

6. The jury found one statutory aggravating circumstance: "The offense of murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." See OCGA § 17-10-30 (b) (7). In his first three enumerations of error, which are argued together, Alderman questions the evidence, the charge, and the verdict respecting this statutory aggravating circumstance.

(a) When we reviewed this case previously, we held that the evidence was sufficient to support the jury's finding of the § (b) (7) circumstance beyond a reasonable doubt. Essentially the same evidence in aggravation was presented to this jury. The facts, recounted in *Alderman v. State,* supra, 241 Ga. at 497-499, distinguish this case from cases in which a finding of the § (b) (7) circumstance would be inappropriate.

(b) The court did not err by charging the jury on all three subparts of the second component of § (b) (7) (torture, depravity of mind and aggravated battery), inasmuch as the state offered evidence to show that the murder involved all three. *West v. State,* 252 Ga. 156, 160 (313 SE2d 67) (1984).

(c) Alderman contends that the jury's verdict, given in the disjunctive by its finding of "torture, depravity of mind, *or* an aggravated battery" (emphasis supplied), is insufficiently definitive, and that it cannot be determined which of the elements of § (b) (7) the jury actually found.

---

[2] We note that one juror asserted that he could consider the evidence and arrive at a fair sentence. Further examination, however, showed that he did not consider the death penalty a fair sentence and that he would vote for a life sentence no matter what the evidence. The trial court did not err by disqualifying this juror despite his "protestations of impartiality." *Wainwright v. Witt,* supra at p. 11 (quoting *Patton v. Yount,* 467 U. S. ___, (1984)).

Another prospective juror testified that she could vote to impose a death sentence if, under the law, she had no other choice. However, if she had a choice, she would vote against the death penalty under any conceivable set of facts. The trial court, noting that under Georgia law a juror always has the choice not to impose a death sentence, properly excused the juror for cause.

The answers of the remaining jurors demonstrate with sufficient clarity their inability to impose a death sentence, and the trial court did not err by finding that they were disqualified to serve as jurors in this case. *Wainwright v. Witt,* supra.

We note that the trial court charged most of the suggested charge on § (b) (7) set forth in the appendix to *West v. State*, supra, except that the court omitted any reference to mutilation, serious disfigurement, or sexual abuse of a deceased victim as showing depravity of mind. Instead, the jury was instructed that in order to find depravity of mind, it had to find torture or an aggravated battery as those terms were defined in the charge. *West*, supra at 161-162. In these circumstances, each of these three sub-parts of § (b) (7) describes essentially the same conduct. *Blake v. State*, 239 Ga. 292 (5) (236 SE2d 637) (1977). Therefore, absent a timely objection to the form of the verdict, the verdict was appropriate. *Romine v. State*, 251 Ga. 208 (7) (305 SE2d 93) (1983).

7. In his next two enumerations of error, Alderman complains of the exclusion of evidence offered in mitigation.

In one instance, Alderman wished to show that shortly after the first trial, co-defendant Brown told a fellow inmate, John Sato, that he (Brown) had killed Alderman's wife and that Alderman had not been a party to the murder. Sato related this to Alderman, and his attorneys recorded electronically Sato's account of the incident. The tape subsequently disappeared, as did Sato.

The trial court refused to allow Alderman to testify to the jury that Sato said that Brown said that Alderman was innocent. This refusal, Alderman contends, was reversible error.

We note that Brown was a state's witness and that he testified that Alderman killed his wife with Brown's assistance. Therefore, his prior inconsistent statements, if any, would be admissible as substantive evidence over an objection that such out-of-court statements are hearsay, or impeaching only. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). However, such a statement must be proved by competent evidence — notably, by a witness who heard it made. See *Castell v. State*, 250 Ga. 776 (1b) (301 SE2d 234) (1983). Sato would have been such a witness, but Alderman was not. His only knowledge of the fact to be proved — i.e., Brown's inconsistent statement — is what someone else told him. Alderman's testimony was excluded properly.

We find no merit to Alderman's contention that *Green v. Georgia*, 442 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979), compels the admission of such testimony at the sentencing phase of a death penalty trial.

In *Green*, the United States Supreme Court considered the exclusion of an admission by a co-defendant that he (and not Green) had been the actual killer. The witness who heard the admission was available to testify. The Court stated: "The excluded testimony was highly relevant to a critical issue in the punishment phase of the trial, [cits.], and substantial reasons existed to assume its reliability. . . . Perhaps most important, the State considered the testimony suffi-

ciently reliable to use it against [the co-defendant], and to base a sentence of death upon it. *In these unique circumstances*, 'the hearsay rule may not be applied mechanistically to defeat the ends of justice.' [Cit.]" Id. 442 U. S. at 97. (Emphasis supplied.)

In this case, Alderman's hearsay version of the incident obviously was not reliable. Moreover, another witness (Robert Waters) testified to a statement substantially similar to that allegedly made to Sato. In the circumstances of this case, the hearsay rule was not "applied mechanistically to defeat the ends of justice."

In the other instance, Alderman wished to place in evidence statements made by him while in a hypnotic trance. This evidence was excluded at the first trial, and the court's rejection of it was sustained on appeal. *Alderman v. State*, supra, 241 Ga. at 510-511. There was no error.

8. In his 10th enumeration, Alderman contends that the notice provisions of OCGA § 17-10-2 were violated when certain witnesses, who had testified at the previous trial on the issue of guilt or innocence, gave testimony at the re-sentencing trial which contained information not previously revealed.

Alderman objected when this first occurred, and the trial court ruled: "I'm just going to let every witness testify who testified in the case before and if they vary their testimony or add additional testimony, you can ask them why they did it, why they varied it or why they added new testimony."

When a case is retried as to sentence, both the state and the defendant are entitled to offer evidence on the issue of guilt or innocence, not because the validity of the conviction is at issue, but because the jury needs to examine the circumstances of the offense (as well as any aspect of the defendant's character or prior record) in order to decide intelligently the question of punishment. *Blankenship v. State*, 251 Ga. 621 (308 SE2d 369) (1983); *Eddings v. Oklahoma*, 455 U. S. 104 (102 SC 869, 71 LE2d 1) (1982); *Lockett v. Ohio*, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978). Moreover, a jury should know the extent of a defendant's culpability and the strength of the state's evidence in this regard. See *Enmund v. Florida*, 458 U. S. 782 (102 SC 3368, 73 LE2d 1140) (1982).

For these reasons, any evidence the state presents at a re-sentencing trial is "in aggravation," in that the state relies upon it in seeking the death penalty. We cannot agree, however, that the state is required by OCGA § 17-10-2 to supply, in advance, a full prospectus of the expected testimony of every witness to the circumstances of the offense.

As to such witnesses, the requirement of OCGA § 17-10-2 is satisfied where, as here, the defendant has received not only the names of the witnesses, but a transcript of their prior testimony.

The trial court's ruling was correct.

9. In his 11th enumeration, Alderman complains of the prosecutor's closing argument, which proceeded as follows:

(The D.A.): "But since I've been in the office, which is 1977, several years after this case was tried, and this case has been there, I haven't been directly involved with it all the time, naturally not, but at no time do I know — "

(Defense counsel): "Your Honor, we're going to object to any facts outside the record that the District Attorney might testify to."

(The D.A.): "Judge, I'm commenting essentially on the testimony."

(The Court): "Well, you can do that, but don't comment on anything that you know personally or did not know."

(The D.A.): "All right, sir."

Later, the following transpired:

(The D.A.): "You can turn Alderman aloose just because you like the way he looks. Did you know that? You all . . .."

(Defense counsel): "Your Honor, I'm going to object to that. They can't turn Alderman loose. They're here for one limited purpose."

(The D.A.): "Excuse me, let me — I'm sorry, Judge. I didn't mean to say that. I meant to say it, but I said it the wrong way.

[To the jury]: "You can give Alderman life just because you like the way he looks."

We find no reversible error in the foregoing. Regarding the remainder of the argument, we find nothing that requires reversal of the death penalty. *Spivey v. State*, 253 Ga. 187 (4) (319 SE2d 420) (1984).

10. The trial court did not err in refusing to give Alderman's request to charge that if the jury could not reach a verdict, a life sentence would be imposed. *Ingram v. State*, 253 Ga. 622 (15) (323 SE2d 801) (1984); *Allen v. State*, 253 Ga. 390 (2) (321 SE2d 710) (1984). Alderman's 12th enumeration is without merit.

11. In his 15th enumeration, Alderman contends the court's charge was improper.

(a) The court prefaced its charge by stating: "I'm going to start this Charge today by stating some general principles of law that you are to apply to the evidence and then after I do that, I'm going to give you the substantive law as it applies to your responsibilities in this particular case." Then the court instructed the jury on standard principles of law, including burden of proof beyond a reasonable doubt, credibility of witnesses, impeachment, expert testimony, circumstantial evidence, and parties to a crime. Afterwards, the court gave instructions usual to death penalty cases, including mitigating and aggravating circumstances, and the scope of the jury's sentencing

discretion.

Alderman contends the court erred by referring only to the latter portion of the charge as being "substantive."

Reviewing the charge as a whole, the jurors were properly instructed. *Felker v. State*, 252 Ga. 351 (16) (314 SE2d 621) (1984). Although Alderman is doubtless correct in his contention that *all* of the court's charge was "substantive," we do not agree that the manner in which the charge was given denigrated the importance of any of its several parts (if, indeed, so fine a point was ever registered in the mind of a single juror!)

(b) The court did not err by instructing the jury that Alderman already had been found guilty, and that the jury could not alter that finding. This instruction was a correct statement of law. Conjoined with the further instruction that the jury could nonetheless consider the strength of the evidence of guilt in determining sentence, this charge clearly benefited Alderman.

(c) The court's instructions on mitigating circumstances were sufficient.

(d) The court did not err by failing to instruct the jury that the indictment was not evidence, inasmuch as Alderman stood convicted of the crime charged in the indictment. The copy sent out with the jury did not show the previous jury's sentencing verdict.

12. We find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (1).

13. We conclude that Alderman's death sentence is neither excessive nor disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3).

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Conner v. State*, 251 Ga. 113 (303 SE2d 266) (1983); *Smith v. State*, 249 Ga. 228 (290 SE2d 43) (1982); *Krier v. State*, 249 Ga. 80 (287 SE2d 531) (1982); *Cunningham v. State*, 248 Ga. 558 (284 SE2d 390) (1981); *Brown v. State*, 247 Ga. 298 (275 SE2d 52) (1981); *High v. State*, 247 Ga. 289 (276 SE2d 5) (1981); *Strickland v. State*, 247 Ga. 219 (275 SE2d 29) (1981); *Tyler v. State*, 247 Ga. 119 (274 SE2d 549) (1981); *Nelson v. State*, 247 Ga. 172 (274 SE2d 317) (1981); *Cape v. State*, 246 Ga. 520 (272 SE2d 487) (1980); *Thomas v. State*, 245 Ga. 688 (266 SE2d 499) (1980); *Hardy v. State*, 245 Ga. 272 (264 SE2d 209) (1980); *Hamilton v. State*, 244 Ga. 145 (259 SE2d 81) (1979); *Bowen v. State*, 244 Ga. 495 (260 SE2d 855) (1979); *Johnson v. State*, 242 Ga. 649 (250 SE2d 394) (1978); *Alderman v. State*, 241 Ga. 496 (246 SE2d 642) (1978); *Morgan v. State*, 241 Ga. 485 (246 SE2d 198)

(1978); *Blake v. State,* 239 Ga. 292 (236 SE2d 637) (1977); *Dix v. State,* 238 Ga. 209 (232 SE2d 47) (1977); *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976).

DECIDED FEBRUARY 28, 1985 —
REHEARING DENIED MARCH 28, 1985.

G. Terry Jackson, Michael G. Schiavone, for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn,* for appellee.