## 42547. DAVIS v. THE STATE.
### (340 SE2d 862)

CLARKE, Justice.

George Bernard Davis, Jr., was convicted by a jury in Elbert County for the armed robbery and murder of Richard Rice. He was sentenced to death for the murder. The case is here on direct appeal, for review under the Unified Appeal Procedure, 252 Ga. A-13 et seq., and for the automatic sentence review required by OCGA § 17-10-35.[1]

*Facts*

The victim, Richard Rice, owned Rice's Garage in Elbert County. Shortly before noon on February 13, 1984, a person called Rice's grandson stating that a green Chevrolet was located at the trash

---

[1] Davis was sentenced to death on February 6, 1985. He filed a motion for new trial raising the general grounds on March 7. The motion was denied May 29. A notice of appeal was duly filed and the case was docketed in the court July 24, 1985. Oral arguments were heard October 16, 1985.

dumpsters on Bobby Brown Road and needed to be picked up. He relayed this message to Rice, who got into his wrecker and drove to the area.

At about one o'clock, Danny Burke stopped at the intersection of Bobby Brown Road and Woodlawn Church Road to talk to Reverend DeWitt Waters. Burke and Waters each observed the victim's wrecker at the dumpsters. It was backed up to a green Chevrolet, which the victim appeared to be preparing to tow. The witnesses saw nothing unusual; the car was hooked up, and Rice was walking around the car, checking to see that it was hooked up properly. Neither witness saw any one besides Mr. Rice in the area. After he finished checking the hookup, Rice got into the wrecker and drove off, down Woodlawn Church Road towards Elberton.

Shortly afterwards, William Irwin observed the victim's wrecker, about 100 yards in front of him on Woodlawn Church Road, traveling at 40-45 mph. Irwin testified that a black male leaned out of the driver's side window of the automobile in tow, and fired two or three times. The wrecker continued up the road for another 200 yards and then pulled over to the side of the road. Irwin drove on by. He testified, "Well, it sort of seemed funny to me at first, but when nothing happened — I mean the wrecker didn't swerve or anything. and just went right on up the road and then pulled over, and I thought maybe the guy worked for Mr. Rice." He testified that he thought the gunshots had been a signal of some kind.

Thomas Childs resides on Woodlawn Church Road about a half to three-quarters of a mile from the dumpsters. Early in the afternoon of February 13, Mr. Childs observed the victim's wrecker stopped by the side of the road in front of Mr. Childs' home. The wrecker's motor was running, its windshield wipers were on (it was raining), and the driver's-side door was open. Childs went out to the wrecker and found Richard Rice slumped over in the seat, his hand grasping an automobile bumper jack. He appeared to be dead. Childs shut the door and called the police.

The back window of the wrecker had what appeared to be a bullet hole in its lower left corner. During the autopsy examination, one bullet was found in Rice's clothing and another was removed from the inside of his skull. He had one graze wound on the top of his left shoulder where a bullet had come to rest without penetrating the skin. Another bullet had entered the ear lobe, passed through the face, and exited on the right side of the face. A third bullet had entered the neck and lodged in the "inner table" of the skull. The autopsist testified that both of the head wounds were potentially fatal and had been inflicted by a gun fired from a very close range — two or three inches.

Acting on information from a variety of sources, law enforcement

officers located appellant Davis in Lincoln County. He was transported to the sheriff's office in Elbert County, given his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and interrogated. After first denying any involvement in the death of Richard Rice, Davis confessed.

According to his written confession, Davis drove his green Chevrolet to Richard Rice's garage, arriving at ten minutes before nine. He wanted Rice to fix another car that he owned. Rice had put an engine and transmission in a third car belonging to Davis the previous October and Davis had not yet paid Rice for the work. According to Davis, Rice told him that he was going to remove the engine and transmission and junk the car. Davis left.

Davis stated that he then called Rice's garage and reported a car parked by some dumpsters. Next, he drove to the area and waited for Rice. He claimed that when Rice arrived, he told Rice he wanted to talk to him but Rice grabbed a bumper jack out of his wrecker and threatened to kill him. Davis hid behind his car. Rice hooked it to the wrecker. As Rice was getting into the wrecker, Davis entered the car.

Rice drove away with Davis' car in tow. Davis blew his horn but Rice would not stop. Davis got out his gun and fired twice, the second shot breaking the rear window of the wrecker. Rice pulled over and stepped out of the wrecker with a bumper jack in his hand. Davis shot him. He took Rice's wallet containing over $800, let his car down, and drove away.

Davis led the officers to the gun identified by ballistics examination as the murder weapon, and to the victim's wallet.

The evidence is sufficient to support the conviction for murder and armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. In his first enumeration of error, Davis contends the trial court erred by admitting in evidence statements made by Davis during custodial interrogation.

(a) First, Davis contends that he was arrested without probable cause and that his post-arrest statements should have been excluded as a fruit of an unconstitutional arrest. See *Brown v. Illinois*, 422 U. S. 590 (95 SC 2254, 45 LE2d 416) (1975); *Devier v. State*, 253 Ga. 604 (7) (323 SE2d 150) (1984).

Prior to trial, Davis' attorney informed the court that he did not anticipate challenging the validity of the arrest. See Rule II (A) (8) of the Unified Appeal Procedure, supra. He did file a pre-trial motion to exclude defendant's confession, but nothing in the motion mentioned the Fourth Amendment or otherwise hinted at a claim of an illegal arrest.

At trial, the court conducted a Jackson-Denno hearing outside the presence of the jury to determine the voluntariness of Davis'

statements to law enforcement officers. During this hearing, defendant's attorney, for the first time, made two obfuscatory references to the legality of the arrest.[2] It is clear, however, that neither the state nor the trial judge was aware that Davis was raising any kind of Fourth Amendment claim. Essentially, Davis is attempting to raise such a claim for the first time on appeal. We hold that he is too late. We decline to address alleged deficiencies in the state's showing of probable cause to arrest when the state could not reasonably have been aware that it was necessary to establish probable cause, and when the state might well have decided to make a more complete evidential presentation if it had been aware that a Fourth Amendment issue was being raised.[3]

(b) Davis further contends that he was arrested in violation of Georgia law in that he was arrested in Lincoln County, without a warrant, by the sheriff of Elbert County. He contends that although a sheriff may make an arrest in any county with a warrant, see OCGA § 17-4-25, he may make a warrantless arrest only in his home county.

This contention is answered by the preceding subdivision of this opinion and by *Durden v. State*, 250 Ga. 325 (1) (297 SE2d 237) (1982).

---

[2] The first occurred in response to an objection by the state on relevancy grounds, as follows:

"MR. TISE [for the State]: Your Honor, in the interest of time I didn't object, but I fail to see the relevance of whether or not he went voluntarily.

"THE COURT: What do you say about that, Mr. Keeble?

"MR. KEEBLE [for the defendant]: Well, Your Honor, I think that whether or not anyone is being illegally detained would certainly affect the voluntariness of their statement.

"THE COURT: Are you suggesting that the defendant was illegally detained? The purpose of this is a Jackson-Denno hearing to determine the voluntariness of the statement here.

"MR. KEEBLE: I agree with the Court, but —

"THE COURT: I don't want to cut you off. I want to give you every leeway, but I want you to stay within the guidelines."

The second reference occurred after the court asked if the defense had any objections to the first written statement, which was not inculpatory, as follows:

"THE COURT: I assume you wouldn't have any objection to that statement, would you, Mr. Keeble?

"MR. KEEBLE: Your Honor, I voice the same objection. It has not been established that this man was ever under arrest or that he was ever informed of what he was being charged with.

"THE COURT: All right. I will find that it was freely and voluntarily given, without any coercion or threats."

[3] We do not say that what is in the record does not establish probable cause. But plainly the state could have shown with greater clarity, for example, the "reliability," "veracity," and "basis of knowledge" of the persons to whom investigators had talked, if it had been necessary to do so. See *Curry v. State*, 255 Ga. 215 (1) (336 SE2d 762) (1985). Moreover, it is not clear that Davis was "seized" when the officers found him and transported him to the Lincoln County sheriff's office. If Davis went voluntarily, no Fourth Amendment violation occurred even if probable cause was lacking.

Since no Fourth Amendment issue was raised below, we not only lack a clear record in this regard, we do not have the benefit of any trial court findings on this issue.

(c) Finally, Davis contends that his initial denial of any involvement in the death of Richard Rice was equivalent to an invocation of his right to remain silent. We do not agree, and find no error in the trial court's determination that Davis' confession was voluntary and admissible.

2. The trial court did not err by admitting in evidence certain photographs of the victim over the objection that the photographs were cumulative to the testimony of the autopsist and were inflammatory. *Felker v. State*, 252 Ga. 351 (10 b) (314 SE2d 621) (1984).

3. The jury found statutory aggravating circumstances as follows: "1. The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: armed robbery; 2. The offense of murder was committed while the offender was engaged in the commission of aggravated battery." See OCGA § 17-10-30 (b) (2). In his third and fourth enumerations, Davis questions the court's charge on the statutory aggravating circumstances, and the sufficiency of the evidence to support the jury's findings.

(a) The court's charge at the sentencing phase included the following instructions:

"Now, members of the jury, I charge you that the State contends that the offense of murder was committed under the following aggravating circumstances: First, the offense of murder was committed while the defendant was engaged in commission of another capital felony, to wit, armed robbery; or, Number Two, the offense of murder was committed while the defendant was engaged in the commission of aggravated battery, which is a felony.

"I charge you that a capital felony, as that term is used in my previous charge, is a crime punishable by death or life imprisonment and includes the crime armed robbery. I charge you that a person commits armed robbery within the meaning of the previous charge when with the intent to commit a theft he takes property of another by use of an offensive weapon or any replica, article, or device having the appearance of such weapon.

"A person commits aggravated battery within the meaning of the previous charge when he maliciously causes bodily harm to another person by depriving him of a member of his body, by rendering a member of his body useless, or by seriously disfiguring his body or a member thereof."

We find no merit to the contention that the court's charge might have led the jury to believe that it was authorized to sentence Davis to death for the armed robbery. Not only do the above-quoted portions of the charge clearly inform the jury that the death penalty was being sought for "the offense of *murder*," but the court had previously instructed the jury that it was the jury's responsibility to determine the sentence to be imposed for the offense of murder and the

court specifically stated: "I will impose the penalty on the armed robbery. You will only be concerned with Count I [the murder count]."

(b) Davis contends the evidence shows that he shot and killed the victim first and only then decided to rob the victim and that the jury therefore was not authorized to find that he committed the offense of murder "while . . . engaged in the commission of" the offense of armed robbery. OCGA § 17-10-30 (b) (2). We disagree.

Davis was guilty of committing an armed robbery if, by use of an offensive weapon and with the intent to commit a theft, he took a billfold belonging to Richard Rice "regardless of when the intent to take the victim's billfold arose, regardless of whether the victim was incapacitated and even if the victim had been killed instantly. [Cit.]" *Young v. State*, 251 Ga. 153, 160 (303 SE2d 431) (1983) (Hill, C. J., concurring in part and dissenting in part).

Moreover, the offense of murder does not terminate at the instant of death, and even if Davis decided to take the victim's money only after having twice shot him in the head, the jury was authorized to find that the offense of murder was committed while Davis was engaged in the commission of the offense of armed robbery. See *Conklin v. State*, 254 Ga. 558 (2b) (331 SE2d 532) (1985); *Romine v. State*, 251 Ga. 208 (8) (305 SE2d 93) (1983); *Horton v. State*, 249 Ga. 871 (11) (295 SE2d 281) (1982).

Finally, in any event, the jury was not required to believe Davis' statement that the robbery was an afterthought, and the evidence was sufficient to support a finding to the contrary. Compare *Wilson v. State*, 250 Ga. 630 (300 SE2d 640) (1983).

(c) Davis contends the court's charge failed to make it clear that the aggravated battery had to precede the killing and be a separate and distinct act from the act causing death in order to constitute a statutory aggravating circumstance, and that there was no such separate and distinct act of aggravated battery in this case. We agree.

The offense of aggravated battery forms a part of two distinct statutory aggravating circumstances: OCGA § 17-10-30 (b) (2) ("The offense of murder . . . was committed while the offender was engaged in the commission of another capital felony or aggravated battery . . ."); and OCGA § 17-10-30 (b) (7) ("The offense of murder . . . was outrageously or wantonly vile, horrible or inhuman in that it involved . . . an aggravated battery to the victim.")

By its terms, § b (7) defines an aggravating circumstance in which an aggravated battery has been committed upon the *murder* victim. The § b (2) circumstance, on the other hand, authorizes a death sentence where the defendant murders one person and commits an aggravated battery upon a second person. See *Cook v. State*, 255 Ga. 565 (16) (340 SE2d 891) (1986). In such a case, so long as the murder and the aggravated battery are committed within "a relatively

short period of time in what can be fairly viewed as one continuous course of criminal conduct," *Peek v. State*, 239 Ga. 422, 431 (238 SE2d 12) (1977), a jury would be authorized to find § b (2) whether or not the victim of the aggravated battery was injured prior to the death of the murder victim.

However, § b (2) may also apply where the aggravated battery was committed upon the murder victim. In this situation, it must be kept in mind that *every* murder involves the commission of an aggravated battery upon the murder victim, inasmuch as the act which deprives the victim of life necessarily "causes bodily harm to [the victim] by depriving him of a member of his body [and] by rendering a member of his body useless . . ." OCGA § 16-5-24.

The United States Supreme Court has warned that "a system 'could have standards so vague that they would fail adequately to channel the sentencing decision pattern of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in *Furman* [*v. Georgia*, 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972)] could occur.' [Cit.] To avoid this constitutional flaw, an aggravating circumstance must *genuinely narrow* the class of persons eligible for the death penalty and must *reasonably justify* the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, ___ U. S. ___ (103 SC 2733, 77 LE2d 235) (1983) (footnote omitted) (emphasis supplied).

At a minimum, a statutory aggravating circumstance "may not . . . be interpreted so broadly that it can be applied to every murder; in that event, the requirement that the sentence of death may not be imposed unless at least one statutory aggravating circumstance is found could not serve its intended purpose of helping to distinguish cases in which the death penalty *is* imposed from the many cases in which it is *not*." *Phillips v. State*, 250 Ga. 336 (6a) (297 SE2d 217) (1982).

Since in every case the evidence presented to prove the commission of murder will inevitably prove also the commission of an aggravated battery upon the murder victim, some limitation must be imposed upon the use of an aggravated battery to the murder victim as a statutory aggravating circumstance. We conclude that when the aggravated battery is alleged to have been committed upon the person who is also the murder victim, the same limitations should apply to the § b (2) circumstance as to the § b (7) circumstance. That is, "[i]nsofar as aggravated battery . . . [is] concerned, only facts occurring prior to death may be considered . . . i.e., only facts showing aggravated battery, . . . which are separate from the act causing instantaneous death, will support a finding of . . . aggravated battery." *Hance v. State*, 245 Ga. 856, 861-62 (268 SE2d 339) (1980).

In this case, the jury was not charged on these limitations re-

specting the aggravated battery subpart of the § b (2) aggravating circumstance. Moreover, there is in this case no evidence of an aggravated battery except for the two gunshot wounds to the victim's head which killed him. Cf. *Phillips v. State*, supra at pp. 341-42; *Alderman v. State*, 254 Ga. 206 (6c) (327 SE2d 168) (1985). Therefore, the jury's finding that "the offense of murder was committed while the defendant was engaged in the commission of aggravated battery" does not suffice to authorize the imposition of a death sentence.

(d) Nonetheless, the jury's finding that "the offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: armed robbery" was sufficient to allow the case to "pass the second plane into that area in which the death penalty is authorized." *Zant v. Stephens*, 250 Ga. 97, 100 (297 SE2d 1) (1982). Once beyond this plane, the jury was authorized to consider all the facts and circumstances of the case, including evidence that the victim was shot in the head, execution style, from very close range, after which the defendant robbed the victim of over $800 and fled the scene.

We conclude, from our review of the record and all of the circumstances of the offense, that the charge on the aggravated battery subpart of § b (2), and the jury's finding thereof as ostensibly authorized by the charge, did not lead to the imposition of a death sentence under the impermissible influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (2).

4. The sentence of death imposed in this case is neither excessive nor disproportionate to sentences imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The cases listed in the appendix support the imposition of the death penalty in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 11, 1986.

*Floyd W. Keeble, Jr.*, for appellant.

*Lindsey A. Tise, Jr.*, District Attorney, *Michael J. Bowers*, Attorney General, *Paula K. Smith*, Assistant Attorney General, for appellee.

APPENDIX.

*Roberts v. State*, 252 Ga. 227 (314 SE2d 83) (1984); *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980); *Amadeo v. State*, 243 Ga. 627 (255 SE2d 718) (1979); *Bowden v. State*, 239 Ga. 821 (238 SE2d 905) (1977); *Young v. State*, 237 Ga. 852 (230 SE2d 287) (1976); *Pulliam v. State*, 236 Ga.

460 (224 SE2d 8) (1976); *Dobbs v. State*, 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State*, 236 Ga. 339 (223 SE2d 703) (1976); *Moore v. State*, 233 Ga. 861 (213 SE2d 829) (1975).