S92P1336. HILL v. THE STATE.
(427 SE2d 770)

SEARS-COLLINS, Justice.

Warren Lee Hill was convicted of murder by a jury in Lee County and sentenced to death. He appeals. We affirm.[1]

Hill and the victim were both serving time at the Lee Correctional Institute. Early in the morning of August 17, 1990, a correctional officer, hearing a loud noise, rushed to Hill's cell, where he ob-

---

[1] The crime occurred on August 17, 1990. He was indicted in January 1991. The case went to trial on July 29, 1991. The trial ended August 2, 1991. Hill's motion for new trial was denied June 5, 1992. The appeal was orally argued in this court on October 14, 1992.

served Hill bludgeoning the victim as the latter lay in his bed. By the time the officer called for assistance and returned to the cell, the victim was mortally wounded. Hill surrendered his weapon, a board embedded with nails, apparently removed by Hill from under a bathroom sink.

The evidence supports the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. In his first five enumerations of error and in his fifteenth enumeration of error, Hill contends that the trial judge erred in his handling of Hill's motions to recuse and to adjourn at a reasonable time.

(a) Prior to trial, the defense filed a motion to sequester and a motion to adjourn at a reasonable time. The trial court initially indicated that it would grant the latter, but that it was inclined not to sequester the jury until deliberations were begun. The defense submitted a proposed order covering, among other things, adjournment at 5:00 p.m. during the trial and sequestration from the time the jurors were sworn. In response to this proposed order, the trial court telephoned defense counsel's office. In this telephone conversation, the trial court acknowledged that sequestration in Georgia capital cases was automatic under OCGA § 15-12-142 (a) unless the defendant waives his right to sequestration. The trial court indicated, however, that it was inclined to extend substantially the length of the trial day if the jury were sequestered because the court felt that fairness to the jurors warranted trying to minimize the amount of time they spent locked in a motel, unable to attend to their business and personal obligations. Defense counsel moved that the trial judge be recused for bias and filed an affidavit in support of its motion setting out the fact discussed above. The trial judge, pursuant to Uniform Superior Court Rule 25.2, considered the legal sufficiency of the facts set forth in the affidavit in order to determine if referring the motion to another judge was warranted.

The trial court properly determined that the facts of the affidavit, taken as true, did not support a charge of bias sufficient to warrant recusal under this court's decisions in *Jones v. State*, 247 Ga. 268 (257 SE2d 67) (1981) and *State v. Fleming*, 245 Ga. 700 (267 SE2d 207) (1980). The trial court, therefore, properly denied defendant's motion to recuse and did not err by not referring the motion to another judge.

(b) Hill also contends that the trial judge's failure to adjourn at a reasonable time violated Hill's right to effective counsel and to due process of law. Although the first day of the voir dire lasted until 11:00 p.m., the court adjourned between 6:00 and 8:00 p.m. on the remaining days of the trial. As we have held, a "trial court retains the discretion to determine how late to hold court before recessing for the evening." *Spencer v. State*, 260 Ga. 640, 647 (9) (398 SE2d 179)

(1990). In this case, Hill was represented by three attorneys. Assuming that, as Hill contends, he was "entitled to counsel who [were] awake, alert, and not worn down by fatigue," we will not assume that continuing court until 11:00 p.m. on one day of trial so fatigued his three attorneys that Hill was deprived of his right to effective assistance of counsel. On the whole, the record does not reveal that the trial was unfairly expedited, either through long sessions or truncated arguments and examinations.

No abuse of discretion has been shown in this case. *Lynd v. State*, 262 Ga. 58 (4) (414 SE2d 5) (1992).

2. Hill contends that his challenges to the jury arrays should have been granted. Hill does not contend the jury lists themselves are unrepresentative but argues that the jurors actually reporting for service do not represent a fair cross-section of the community because the jury commissioners failed accurately to determine which citizens of Lee County were competent and able to serve, resulting in a high number of excusals each term. Pointing to evidence that blacks were underrepresented by more than five percent on two of nine traverse jury venires and that women were similarly underrepresented on three of those venires, Hill argues that he has demonstrated "systematic" underrepresentation. We disagree.

When venires are drawn randomly from jury lists, some variation in the makeup of individual venires is expected. See *Meders v. State*, 260 Ga. 49 (2) (389 SE2d 320) (1990). Our own analysis of the data Hill provided to the trial court shows that while blacks and women were mildly underrepresented on some venires, they were mildly overrepresented on others. On balance, neither women nor blacks are significantly underrepresented either on venires as drawn, or as present for court.[2] No "systematic" underrepresentation has been shown. *Duren v. Missouri*, 439 U. S. 357 (99 SC 664, 58 LE2d 579) (1979).

3. Our death penalty laws are not unconstitutional for any reason alleged.

4. In his ninth enumeration of error, Hill contends that the trial court erred by refusing to strike one of the venire members after telling her that the court was in favor of the death penalty but would not impose it where it was not warranted. We do not read the court's comment as encouraging the imposition of a death penalty in this case. The court was merely trying to explain "prejudice," following a

---

[2] Hill's data shows that of 730 jurors drawn for service, 515 were present in court for roll call. Of the 730 jurors drawn, 19.73 percent were black and 53.5 percent were women. Of the 515 jurors who showed up at court, 21.36 percent were black and 52.43 percent were women. Similar figures may be derived from the data supplied for the three grand juries (and one supplemental list). These figures compare favorably with a total county population (18 and older) that is 22 percent black and 51 percent female.

lengthy examination of the prospective juror on this point. The juror was not, as Hill contends, prejudiced by the court's comment.

5. After imposing sentence for the counts alleging felony murder and aggravated assault, the trial court amended the sentencing form to reflect that these offenses merged into Hill's malice murder conviction. Since all three crimes alleged in the indictment were committed on the same person, the state concedes that merger is appropriate. See *Biddy v. State*, 253 Ga. 289 (2) (319 SE2d 842) (1984). Hill complains, however, that the court's order merges only the sentences, and not the convictions. We disagree. Although the court's orders are somewhat inartfully drafted, the most reasonable construction of them is that Hill's *convictions* for the underlying offenses merge into the malice murder conviction, and that the convictions on Counts 2 and 3 are vacated.

Since the aggravated assault conviction stands vacated, Hill's other complaints about the aggravated assault count are moot.

6. The court did not err by excusing prospective jurors Daniel and Flowers. Daniel testified that although he "believed in" capital punishment, he did not "believe [he] could sleep with" himself if he voted to impose it; that he did not think he "could live with it . . . if [he] was a part of it." Flowers testified that if the defendant asked for mercy, she "would not" impose a death sentence; "that's a man asking to save his life." The court was authorized to conclude that their views would "prevent or substantially impair" the performance of their duties as jurors " ' "in accordance with [their] instructions and [their] oath." ' " *Alderman v. State*, 254 Ga. 206, 207 (4) (327 SE2d 168) (1985) (quoting from *Wainwright v. Witt*, 469 U. S. 412 (105 SC 844, 83 LE2d 841) (1985)).

There was no improper limitation of the voir dire examination. *Curry v. State*, 255 Ga. 215 (2) (b) (336 SE2d 762) (1985). Nor do we agree that the trial court's handling of *"Witherspoon"* and "reverse-*Witherspoon"* questioning was "imbalanced." See *Lynd v. State*, 262 Ga. at 65-66 (Benham, J., concurring specially).

7. In the course of objecting to defense counsel's statement to one prospective juror during voir dire that the state was going to ask "the twelve folks that are selected as jurors to put the defendant to death," the prosecutor stated: "[T]here is no question that [this juror] or this jury is not going to be sending this gentleman to death, even if they should find a death penalty in this." Hill contends this comment had the effect of reducing the juror's sense of the responsibility for determining the appropriateness of death. *Caldwell v. Mississippi*, 472 U. S. 320 (105 SC 2633, 86 LE2d 231) (1985). We note that while the jury might "sentence" the defendant to death, it would not "put" him to death or attend his execution. In any event, any improper impact the prosecutor's remark may have had on this juror

was ameliorated by the curative instruction given immediately by the court.

Hill further contends that the trial court's use of the verbs "fix" when referring to the jurors' authority to impose a life sentence and "recommend" when addressing the death penalty unconstitutionally lessened the jury's sense of responsibility during the sentencing phase. *Caldwell,* supra.

The sentencing charge concluded with the following language: "Whatever penalty is to be imposed within the limits of the law, as I have instructed you, is a matter solely for you, the members of the jury to determine. . . ."

The jury charge as a whole did not

give the jury a view of its role in the capital sentencing procedure that was fundamentally incompatible with the Eighth Amendment's heightened "need for reliability in the determination that death is the appropriate punishment in a specific case."

*Caldwell,* supra, 472 U. S. at 340. Accord *Holiday v. State,* 258 Ga. 393, 399 (369 SE2d 241) (1988).

8. The jury was selected late one afternoon and allowed to go home that evening, with the consent of the defendant. The jury was to return the next morning to be sworn in and sequestered. See OCGA § 15-12-142; *Jones v. State,* 243 Ga. 820 (3) (256 SE2d 907) (1979). The next morning, one juror called in sick. The trial judge talked to her himself, and reported that she was coughing and sounded quite ill. A deputy sent to her home reported that she was out, but that she had called to report that she had been to the doctor "to get her medicine." The trial judge excused her and replaced her with an alternate.

A trial judge is authorized by OCGA § 15-12-172 to replace a juror who "dies, becomes ill, [or for some] other good cause shown to the court is found to be unable to perform his duty. . . ." Id. Hill contends that the trial judge failed adequately to investigate the need for excusing the juror, noting that the trial judge failed to talk to the juror's doctor to determine whether the juror was too ill to continue.

A trial court does have an obligation to investigate the need to excuse an ill juror. It has been held that this is "especially true" where the jury has begun its deliberations and the juror has participated in those deliberations. *Green v. Zant,* 715 F2d 551, 556 (11th Cir. 1983).

Here, the juror was excused not only before the beginning of deliberations, but before the presentation of any evidence — in fact, before the jury was even sworn. The trial judge personally examined

the juror. While he could have investigated further, we find no abuse of discretion. *Graham v. State*, 171 Ga. App. 242 (5) (319 SE2d 484) (1984). See also *Forney v. State*, 255 Ga. 316, 317 (1) (338 SE2d 252) (1986).

9. In his 17th enumeration of error, Hill raises an issue of racial discrimination in the prosecutor's exercise of peremptory challenges. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). There were seven blacks on the panel of forty-two qualified jurors. The prosecutor peremptorily struck three. The remaining four served on the jury.

The prosecutor explained his strikes as follows:

The first of the three was conscientiously averse to the death penalty. (Hill does not seriously dispute that this strike was justified.[3])

The prosecutor stated that he struck the second juror because she was a "follower," and because she was of "limited mental capacity" with a "lesser understanding of the English language."[4]

The prosecutor struck the third juror because he had "independent reports" that he had been "cutting up" and "did not seem to be taking this proceeding very seriously."

We held in *Gamble v. State*, 257 Ga. 325, 327 (357 SE2d 792) (1987) that:

> The explanation offered for striking each black juror must be evaluated in light of the explanations offered for the prosecutor's other peremptory strikes, and, as well, in light of the strength of the prima facie case. The persuasiveness of a proffered explanation may be magnified or diminished by the persuasiveness of companion explanations, and by the strength of the prima facie case.
>
> A court charged with the duty of determining whether the prosecutor has rebutted a prima facie case may be less troubled by one relatively weak explanation for striking a black juror when all the remaining explanations are persuasive than where several of the prosecutor's proffered [explana-

---

[3] The juror testified she did not like the death penalty, could not vote for it, and did not believe in the principle of "an eye for an eye and a tooth for a tooth." See *Davis v. State*, 263 Ga. 5 (10) (426 SE2d 844) (1993).

[4] The transcript of the voir dire examination provides some support for the prosecutor's explanation. Among other things, when asked how she felt about a defendant in a criminal case, the juror answered, "Not too bad. It's o.k." Asked if she had heard "anything about the [recent] events up in Milwaukee," she answered, "No, sir. I don't know where Milwaukee is." She did not understand the Biblical concept of "an eye for an eye and a tooth for a tooth," and she did not know what the word "mercy" meant.

tions] are questionable. Similarly, a weak prima facie case may be rebutted more readily than a strong one.

In this case, the prosecutor struck only one black juror more than would have been statistically proportionate. Moreover, the defendant, the victim and key witnesses were black, which "tend[s] to undercut any motive to exclude [blacks] from the jury." *Hernandez v. New York*, ____ U. S. ____ (111 SC 1859, 1872, 114 LE2d 395) (1991). The trial court was authorized to conclude that the prosecutor's explanations were sufficiently race neutral to overcome Hill's accusation of racial discrimination in the exercise of peremptory challenges. *Ford v. State*, 262 Ga. 558 (423 SE2d 245) (1992).

10. In his 18th enumeration of error, Hill contends that the trial court improperly admitted extrinsic transaction evidence relating to the 1985 murder for which Hill was incarcerated when he committed the crime on trial. The State's proffer did not meet the first and third requirements for admission of independent offenses as set forth by this court in *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991). Nevertheless, we find no reversible error. In the first place, because the jury knew that the crime on trial occurred in prison and that Hill was an inmate, his character was already unavoidably implicated to some extent before any evidence was introduced about the extrinsic transaction. Secondly, the evidence establishing Hill's guilt of the offense of murder is overwhelming. The introduction of the facts of the prior crime did not measurably contribute to the jury's guilty verdict.[5] Therefore, the error in the admission of the extrinsic-transaction evidence in the guilt phase of the trial was harmless.

11. The state laid a sufficient foundation for the admission of photographs of the 1985 extrinsic-crime victim, which the jury properly considered at the sentencing phase of the trial. *Williams v. State*, 255 Ga. 97 (4) (335 SE2d 553) (1985).

12. During closing argument, while the prosecutor was explaining to the jury that although Hill's motive for killing the victim was unknown, motive was not an element of the case the state had to prove, the prosecutor stated: "nobody knows the motive but Warren Lee Hill, and he's not talking." Hill immediately objected and moved for a mistrial. The prosecutor conceded the objection was good and apologized for the comment, emphasizing, however, that the comment "was inadvertent, and I did not realize what I had said until he made the motion for mistrial."

The jury was returned to the courtroom and the court instructed the jury:

---

[5] This evidence would, of course, have been admissible at the sentencing phase in any event. *Ford v. State*, 257 Ga. 461, 463 (360 SE2d 258) (1987).

> I charge you that the last remark that Mr. Smith made was inappropriate and has no place in this case. . . .
>
> I charge you that a defendant in a criminal case is under no duty to present any evidence tending to prove his innocence and is not required to take the stand and testify in the case. If he elects not to testify, no inference hurtful, harmful or adverse to the defendant shall be drawn by the jury, nor shall any such fact be held against him in any way whatsoever.

The comment was not so egregious as to be incurable by the trial court. *Lingerfelt v. State*, 238 Ga. 355 (5) (233 SE2d 356) (1977). In light of the inadvertence of the comment and the court's curative instructions, the denial of Hill's motion for mistrial was not erroneous.

13. Pretermitting whether Hill has preserved his objection to the court's omission to charge impeachment by proof of conviction of a crime, compare *McCoy v. State*, 262 Ga. 699 (425 SE2d 646) (1993), with *Thomas v. State*, 234 Ga. 615, 618 (216 SE2d 859) (1975), any error in the court's omission to charge this specific ground of impeachment was clearly harmless considering the facts of this case and the court's charge on credibility as a whole.

14. The defendant's burden-shifting complaint about the charge on implied malice is without merit. *Gooden v. State*, 261 Ga. 691 (2) (410 SE2d 113) (1991). We need not address his vagueness complaint because "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U. S. 733, 756 (94 SC 2547, 41 LE2d 439) (1974).

15. Two witnesses testified in rebuttal for the state at the sentencing phase of the trial. The name of one of these witnesses was furnished to Hill before trial, and his attorneys interviewed him. The witness, a prison inmate, testified more favorably to Hill than the prosecutor had anticipated based on his investigator's pretrial interviews with the witness. Therefore, the investigator was called by the state to testify about the prior inconsistent statements of the inmate witness. See *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). Hill contends that the notice provisions of OCGA § 17-10-2 were not complied with and the testimony of these two witnesses should have been excluded.

Since this testimony was offered in rebuttal, and since Hill had at least some notice, we find no error. *Buttrum v. State*, 249 Ga. 652 (9) (293 SE2d 334) (1982). See also *Alderman v. State*, 254 Ga. 206 (8) (327 SE2d 168) (1985).

16. The trial court did not err by excluding evidence Hill offered at the sentencing phase concerning the "personal characteristics of

the victim," including his bad character and criminal record. *Sermons v. State*, 262 Ga. 286, 288 (417 SE2d 144) (1992). The general rule is that the character of the victim is not relevant, and the defendant is no more entitled to present such evidence than is the state. *Bryant v. State*, 249 Ga. 242, 243 (2) (290 SE2d 75) (1982).

17. When, at the sentencing phase of the trial, defense counsel began questioning Hill's psychologist about his report and the psychologist began testifying from it, the state asked to see the report. Without objection, defense counsel furnished a copy to the prosecutor. Since there was no objection to furnishing the report, any issue of the state's right to see the report at that time has not been preserved for review.

18. Although the trial court's explanatory remarks at the outset of the sentencing phase trial contained a misstatement of the law concerning the OCGA § 17-10-30 (b) (2) statutory aggravating circumstance, to which defense counsel did not object, the court's instructions to the jury the next day, following the evidence and closing argument, did not contain this misstatement.[6]

The court's charge, including its written instructions to the jury and its oral instructions defining the term "aggravated battery," was adequate to supply the jury with the legal definition of aggravated battery and to sufficiently narrow the jury's sentencing discretion under *Davis v. State*, 255 Ga. 588 (3) (c) (340 SE2d 862) (1986).

19. In his 38th through 42nd enumerations of error, Hill contends the prosecutor argued improperly at the sentencing phase of the trial, misstating the evidence, expressing personal opinions, referring to the possibility of escape, and seeking to minimize the importance of the jury's role. Since none of these objections was raised at trial, our review is limited to determining whether there was improper argument of such magnitude that "in reasonable probability [it] changed the result of the trial." *Todd v. State*, 261 Ga. 766, 767 (2) (a) (410 SE2d 725) (1991).

Much of the argument about which Hill now complains was not objectionable. A prosecutor is entitled to argue inferences from the evidence, even if the inferences the prosecutor argues are not the ones the defendant would like the jury to draw.

Moreover, while it would be improper to urge a death penalty based upon the defendant's religious beliefs, or to urge that the teachings of a particular religion command the imposition of a death penalty in the case at hand, counsel may

---

[6] In its initial explanatory comments, the court told the jury that aggravated assault is a capital felony. Of course, it is not. OCGA § 16-5-21. The court's charge on the § b (2) circumstance did not include "capital felony," only "aggravated battery."

> "bring to his use in the discussion of the case well-established historical facts and may allude to such principles of divine law relating to transactions of men as may be appropriate to the case." [Cit.]

*Conner v. State*, 251 Ga. 113, 122-123 (303 SE2d 266) (1983).

Even assuming, as Hill contends, that the prosecutor went beyond what was fully permissible in this regard, in view of the brevity of the religious references (approximately one page of transcript in a forty-nine-page argument) we do not find sufficient prejudice to overcome the procedural default. *Todd v. State*, supra at 768.

Finally, a defendant's future dangerousness is a legitimate issue for argument. *Ross v. State*, 254 Ga. 22 (7) (326 SE2d 194) (1985).

The trial court did not err by denying Hill's motion for new trial on the basis of complaints about the closing argument raised for the first time after trial.

20. The trial court did not err by declining to deliver Hill's requests to instruct the jury to assume that he would spend the remainder of his life in prison if sentenced to life imprisonment and that he would be electrocuted if sentenced to death. *Bennett v. State*, 262 Ga. 149 (10) (b) (414 SE2d 218) (1992). The remaining defense requests to charge were covered in substance by the instructions delivered by the court. *Pruitt v. State*, 258 Ga. 583, 588 (13) (373 SE2d 192) (1988).

21. The state was not precluded from arguing the presence of OCGA § 17-10-30 (b) (2) and (b) (7) simply because aggravated battery was an element of both circumstances. *Lonchar v. State*, 258 Ga. 447 (6) (369 SE2d 749) (1988).

22. The jury found three statutory aggravating circumstances, § b (1) (the murder was committed by an offender with a prior record of conviction of a capital felony); § b (2) (the murder involved the commission of an aggravated battery); and § b (7) (the murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim). See OCGA § 17-10-30. The evidence supports these findings. OCGA § 17-10-35 (c) (2); *Jefferson v. State*, 256 Ga. 821 (9) (353 SE2d 468) (1987). Compare *Davis v. State*, 255 Ga. 588, 593 (3) (c) (340 SE2d 862) (1986). However, the jury's § b (7) finding was returned in the disjunctive. We agree with Hill that this finding should have been returned in the conjunctive to ensure unanimity concerning the necessary elements of the § b (7) circumstances. *Lipham v. State*, 257 Ga. 808, 813 (7) (364 SE2d 840) (1988). Nevertheless, as in *Lipham*, the death penalty may be affirmed on the basis of the remaining findings of statutory aggravating circumstances. See *Zant v. Stephens*, 250 Ga. 97, 100-101 (297 SE2d 1) (1982).

23. We do not find that Hill's death sentence was imposed as the

result of impermissible passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). Hill's death sentence is neither excessive nor disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of the death penalty in this case.

*Judgment affirmed. Clarke, C. J., Hunt, P. J., Fletcher, Hunstein, JJ., and Judge Harris Hines concur; Benham, J., concurs in the judgment only.*

### APPENDIX.

*Spencer v. State,* 260 Ga. 640 (398 SE2d 179) (1990); *Kinsman v. State,* 259 Ga. 89 (376 SE2d 845) (1989); *Moon v. State,* 258 Ga. 748 (375 SE2d 442) (1988); *Childs v. State,* 257 Ga. 243 (357 SE2d 48) (1987); *Hicks v. State,* 256 Ga. 715 (352 SE2d 762) (1987); *Cook v. State,* 255 Ga. 565 (340 SE2d 843) (1986); *Walker v. State,* 254 Ga. 149 (327 SE2d 475) (1985); *Mincey v. State,* 251 Ga. 255 (304 SE2d 882) (1983); *Tucker v. State,* 245 Ga. 68 (263 SE2d 109) (1980); *Davis v. State,* 241 Ga. 376 (247 SE2d 45) (1978); *Stephens v. State,* 237 Ga. 259 (227 SE2d 261) (1976).

### DECIDED MARCH 15, 1993 —
### RECONSIDERATION DENIED MARCH 30, 1993.

*Hodges, Erwin, Hedrick & Kraselsky, William A. Erwin, David W. Orlowski, Al Grieshaber, Jr.,* for appellant.

*John R. Parks, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Staff Attorney, R. Rucker Smith,* for appellee.