71321. GOLD KIST PEANUTS v. ALBERSON.
(342 SE2d 694)

CARLEY, Judge.

Appellant-defendant Gold Kist Peanuts (Gold Kist) is in the business of buying peanuts for processing and resale. Appellee-plaintiff Alberson d/b/a Sycamore Peanut and Grain (Alberson) contracted to serve as a peanut agent for Gold Kist. In that capacity, Alberson bought peanuts from nearby producers, paying for them with drafts drawn on Gold Kist, and then storing the peanuts until Gold Kist called for them. Under the contract between the parties, it was anticipated that the weight and grade of the peanuts would be calculated at least once and possibly twice. The first weighing and grading occurred when Alberson bought the peanuts (the "in-grade") and the calculation as to each load was used to determine the price that Alberson should pay for the peanuts. The second calculation (the "out-grade") was not specifically required but, if it took place, it occurred when Gold Kist took possession of the peanuts and was used to ascertain their dollar value upon receipt. The contract provided for an allowable dollar-value discrepancy of a specified percentage between the "in-grade" and the "out-grade." The contract further provided that any discrepancy in excess of that percentage would result in an assessment by Gold Kist against Alberson's commission.

After the 1981 crop year, assuming that Alberson had fully earned his commission under the terms of the contract, it is undisputed that Gold Kist owed him a final payment totaling $20,165.50.

However, according to Gold Kist, the peanuts purchased by Alberson had recorded an "in-grade/out-grade" discrepancy which was in excess of the percentage specified in the contract. This discrepancy was the result of a reweighing of the peanuts and a regrading of samples taken from approximately 90% of the loads delivered to Gold Kist from Alberson. Based on the calculation of this discrepancy in weight and grade, Gold Kist made an assessment of $12,142.93, and offered Alberson a final commission of $8,022.57. Alberson refused the offer of a reduced commission and instituted this action to recover the full amount thereof. The case was tried before a jury and a verdict in the amount of $20,165.50 was returned in favor of Alberson. Gold Kist appeals from the judgment entered on that verdict.

1. The first enumeration urges that the trial court erroneously denied Gold Kist's motion for a directed verdict. On appeal, the evidence must be construed to uphold the jury's verdict, and the sole question for determination is whether there is any evidence to authorize the verdict. *Reed v. Wilson*, 160 Ga. App. 254 (1) (287 SE2d 47) (1981). See also *Bicknell v. Joyce Sportswear Co.*, 173 Ga. App. 897 (328 SE2d 564) (1985). The evidence in the instant case would have authorized, but did not demand, a finding that Alberson was entitled to receive his full commission under the contract, because the alleged deficiency in that regard was attributable to Gold Kist rather than to Alberson. With regard to the quality of the peanuts, the jury was not necessarily required to find that Gold Kist's "out-grade" judgment was correct and that Alberson's "in-grade" judgment was erroneous. See generally *Walton v. Hancock*, 14 Ga. App. 754 (82 SE 309) (1914). Moreover, the credibility of Gold Kist's evidence was based upon samples from some 90% of the loads, whereas Alberson's was based upon samples from every load. On the other hand, this evidence would also have authorized, but did not demand, a finding that Gold Kist had asserted the existence of a valid contractual discrepancy attributable to Alberson and, accordingly, that Gold Kist was authorized to withhold a portion of Alberson's commission as the result of his failure to provide peanuts in the weight and of the grade he claimed. On this conflicting evidence, it was not error to deny the motion for directed verdict. "It is for the jury to determine, based upon the evidence presented, whether there was a breach of contract, and, if so, whether the plaintiff sustained damages as a result thereof. [Cit.] Since the evidence as to whether [Alberson] had sustained damages was in conflict in the instant case, the matter was not appropriate for disposition by means of a directed verdict. [Cit.]" *Graphics Prods. Distrib. v. MPL Leasing Corp.*, 170 Ga. App. 555 (1) (317 SE2d 623) (1984).

2. In his complaint, Alberson included a demand for "[i]nterest on sums owed from June 23, 1982. . . ." Prior to the submission of

the case to the jury, attorneys for both parties stipulated that it would be the trial court that "would decide and determine the question of interest, if interest was owed, and if so on what sum, from what date and at what rate of interest." After the jury returned its verdict for Alberson, the trial court found that the verdict evinced a recovery on a "commercial account." Accordingly, the trial court included in the judgment that it entered on the verdict a sum representing pre-judgment interest calculated at the rate of 1-½ percent per month. See OCGA § 7-4-16. Error is enumerated as to this entry of this judgment for pre-judgment interest.

Gold Kist first asserts that no pre-judgment interest was authorized because Alberson's claim was not liquidated. See OCGA § 7-4-15; *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 51 (3) (305 SE2d 864) (1983). It appears, however, that there was no dispute as to the specific and certain amount that Alberson would be entitled to receive from Gold Kist if he had earned the full amount of his commission under the contract. The only dispute was whether, as the result of Alberson's performance, Gold Kist was entitled to enforce an assessment as a reduction against that specific amount. That Gold Kist claimed a credit against the undisputed specific amount that Alberson claimed he was fully owed under the executed contract would not render his claim unliquidated. See *Haygood v. Smith*, 80 Ga. App. 461, 465 (6) (56 SE2d 310) (1949). "The credit . . . only reduced the net balance on the liquidated claim; [it would] not render the [claim] unliquidated. [Cit.]" *Recordex Corp. v. Southeastern Metal Prods.*, 147 Ga. App. 79, 80 (248 SE2d 159) (1978). "Where, as held by the trial court, the gross amount owing from defendant to plaintiff was ascertained and the substantive dispute revolved around credits chargeable against this amount, the amount of the bill is a liquidated sum. [Cit.] Interest on such a sum is collectible from its due date. [Cits.]" *Jordan Bridge Co. v. I. S. Bailey, Jr., Inc.*, 164 Ga. App. 124, 125 (4) (296 SE2d 107) (1982). See also *Buck Creek Indus. v. Crutchfield & Co.*, 133 Ga. App. 80, 81 (1) (210 SE2d 32) (1974). Accordingly, the trial court did not err in determining that Alberson was entitled to pre-judgment interest on the full amount of his recovery of the liquidated claim.

Gold Kist further asserts that the trial court erred in determining that OCGA § 7-4-16 was the applicable statutory provision as to the allowable rate of pre-judgment interest. As indicated, the trial court's determination of the allowable interest was made pursuant to the broad stipulation of the parties' attorneys. However, notwithstanding the seeming breadth of the stipulation, it cannot be construed in such a manner as to "fix or change the law. [Cits.]" *Heavey v. Security Mgt. Co.*, 129 Ga. App. 83, 84 (198 SE2d 694) (1973). See also *P. C. Gailey Contractors v. Exxon Co.*, 143 Ga. App. 827, 828 (1) (240 SE2d

208) (1977); *Motor Fin. Co. of Ga. v. Harris*, 150 Ga. App. 762, 764 (258 SE2d 628) (1979); *Brown v. State*, 175 Ga. App. 246, 249 (333 SE2d 124) (1985). It is the law of this State that a recovery of pre-judgment interest pursuant to OCGA § 7-4-16 requires a pre-trial invocation of the applicability of that provision. *Prince v. Lee Roofing Co.*, 161 Ga. App. 181 (288 SE2d 135) (1982); *Gregory v. Townsend Roofing Co.*, 163 Ga. App. 836 (296 SE2d 154) (1982); *McNair v. Gold Kist*, 166 Ga. App. 782 (305 SE2d 478) (1983); *Belvin v. Houston Fertilizer &c. Co.*, 169 Ga. App. 100 (1) (311 SE2d 526) (1983). Here, the contract itself specified no rate of interest, and, as in *Prince*, supra, Alberson's complaint merely prayed for "interest" without specifying the rate thereof. Accordingly, pre-judgment interest only at the applicable "legal rate" of 7 percent was authorized pursuant to OCGA § 7-4-2 (a) (1). Under the pleadings and pursuant to the stipulation, the trial court erred in entering judgment in an amount of pre-judgment interest which was based upon the inapplicable provisions of OCGA § 7-4-16.

3. Alberson's motion for an assessment of damages for frivolous appeal is denied.

4. The judgment is affirmed with direction that the existing amount of pre-judgment interest be stricken therefrom and that the amount of pre-judgment interest awarded be recalculated at the rate of 7 percent of the liquidated principal amount.

*Judgment affirmed with direction. Birdsong, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 17, 1986 —
REHEARING DENIED MARCH 12, 1986.

*Bob Reinhardt*, for appellant.
*Stephen L. Ivie*, for appellee.