## 76403. WASSON v. WAID.
(372 SE2d 508)

DEEN, Presiding Judge.

Appellant Wasson, an attorney of some thirty years' experience, fell into conversation one day shortly prior to July 7, 1981, with appellee Waid, a retired machinist whom he had known for about fifteen years as a fellow member of the local American Legion post. According to appellant Wasson, Waid complained of the rate of interest he was earning on his savings and loan account and expressed a desire to

invest at a higher rate, whereupon appellant replied that he knew where he could make such an investment and almost immediately arranged for Waid to make a loan in the amount of $5,500 — to Wasson himself, according to Waid, who contends that it was not he but Wasson who had initiated the topic of the loan or "investment." According to Wasson's version, however, Waid had understood from the outset that the loan was to be made to a Mr. and Mrs. Causey, who were friends of Wasson's but whom Waid knew only by sight. On July 7, 1981, Waid delivered to Wasson a certified check in the amount of $5,500 and made payable to the latter. On the same day he and Mr. and Mrs. Causey were asked to gather in Wasson's office, where Wasson endorsed Waid's check to Causey and asked Waid to sign as witness on a deed to secure debt which, along with a promissory note payable to Wasson, the Causeys had executed. Wasson appended to his own signature the word "Trustee." Neither the deed to secure debt nor the promissory note executed by the Causeys mentioned any trust agreement.

The Causeys did not repay the note when it was due at the end of sixty days, and Waid, at Wasson's urging, signed a handwritten extension for approximately one month. When no payment was forthcoming at the end of the thirty days, Wasson instituted an action against the Causeys and obtained judgment for $5,500 plus interest and attorney fees. The Causeys then filed a bankruptcy petition.

Some two years after these latter events and nearly three years after the loan had been made, Waid unsuccessfully demanded payment of Wasson and then filed an action against him, contending at trial that Wasson had borrowed the money in his personal capacity, that it was past due and owing and that demand had been made, and that there had been no discussion of a trust arrangement between them or even of an attorney-client relationship. Wasson answered the complaint, denying all allegations and counterclaiming for $10,000 for intentional infliction of emotional distress and damage to his professional reputation. He also moved for dismissal and for summary judgment. A DeKalb State Court jury found for Waid and against Wasson in the amount of $5,500.

Wasson appeals, enumerating as error the denial of his motions for summary judgment and for directed verdict, contending that Waid had introduced no written evidence either of indebtedness between him and Waid or of revocation of any purported trust agreement. *Held*:

Our review of the record of the instant case reveals that appellant admits the existence of the certified check drawn by Waid with Wasson as payee and with no indication that the latter is acting in other than his personal capacity; moreover, Wasson has produced no document of any sort that might arguably be construed as a trust agree-

ment, insisting that the bare word "Trustee" which he appended to his signature is sufficient to create a trust. The law is otherwise. See OCGA §§ 53-12-21; 53-12-22; 53-12-23; 53-12-26 and annots. We find no evidence that would render appellant's enumerations meritorious and conclude that the evidence was sufficient to authorize the jury's finding that appellee Waid was imposed upon and taken advantage of in an unconscionable manner. The trial court did not err in entering judgment in his favor.

*Judgment affirmed. Sognier, J., concurs specially. Carley, J., concurs in the judgment only.*

SOGNIER, Judge, concurring specially.

I concur in judgment only. I do not find the arrangement used here unusual. Many lawyers over the years have lent money for others under the sobriquet "trustee." I find particularly supportive of appellant's contentions appellee's execution of the extension agreement, and the fact that appellee retained part of the "finder's fee." One construction of the facts would certainly support appellant's position that he was being required, based on an oral promise, to answer for the debt, default, or miscarriage of another contrary to OCGA § 13-5-30.

Nevertheless, "[o]n appeal, the evidence must be construed to uphold the jury's verdict, and the sole question for determination is whether there is any evidence to authorize the verdict. [Cits.]" *Gold Kist Peanuts v. Alberson*, 178 Ga. App. 253, 254 (1) (342 SE2d 694) (1986). Since there is some evidence to support the jury's findings that there was an original undertaking by appellant to borrow the funds from appellee for his own account, I am constrained to agree that the judgment below should be affirmed.

DECIDED SEPTEMBER 6, 1988.

*Johnnie C. Wages*, for appellant.
*Robert J. Golden*, for appellee.