A96A1989. HERRING v. THE STATE.
(481 SE2d 842)

BEASLEY, Judge.

Herring was convicted by a jury for kidnapping with bodily injury, OCGA § 16-5-40, and aggravated assault with an automobile console lid, OCGA § 16-5-21. He was acquitted of other charges, and his motion for new trial was denied.

The evidence is viewed in a light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; in addition, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) (1991); *King v. State*, 213 Ga. App. 268, 269 (444

SE2d 381) (1994).

Herring and his wife had been married eight months at the time of this incident, and she was two months' pregnant. They had an argument, and Herring threw a wine glass at her while she was bathing. She went to the bedroom, and he punched her in the face. She attempted to defend herself with a baseball bat, but he grabbed it and struck her on the face with it. Herring left their home, and Mrs. Herring went to the apartment of neighbor Hollis and made a "911" call.

Herring went to Hollis' apartment and asked to speak to his wife. Mrs. Herring agreed, but when she stepped outside, Herring put her in a "head lock" and dragged her down three flights of stairs, opened the driver's side door, threw her in, and drove off. He repeatedly hit her, including striking her on the face with the console lid from their car. Mrs. Herring suffered a broken nose and other serious injuries including a miscarriage.

Knowing that Herring was without money, Mrs. Herring persuaded him to return to their apartment on the pretext of giving him money. Herring covered her head with a towel to conceal her wounds, and the two walked up the back steps. A police officer was waiting on the second floor. Mrs. Herring ran to him, and Herring ran in the opposite direction but was arrested at his home the next day.

1. In his first enumeration of error, Herring alleges the trial court abused its discretion by excusing a juror. The case was in the middle of trial, and the court took an overnight recess until 9:00 a.m. the following morning. The State had rested, and the defense had two witnesses remaining to testify, including Herring. The juror telephoned the court to say he had experienced mechanical difficulties with his truck on the way to court and would be unable to appear on time for the trial, but would call back as soon as possible to let the court know his progress. When the juror had not called back by 9:35 a.m., the court replaced the missing juror with an alternate and resumed the trial, over Herring's objection.

The juror subsequently called from work, near the repair shop where his truck was being serviced, and informed the court it would not be ready until later that afternoon. He provided the court with his work number and indicated a desire to continue as a juror. During the morning recess and after the juror had already been replaced, the court contacted the juror to instruct him that he must either come to the courthouse voluntarily or be transported by a deputy sheriff on a bench warrant.

After the charge conference at the end of the evidence presentation, the sheriff brought the juror into the courtroom. He told the court his truck was taken to the nearest repair shop between 8:30 and 8:45 and was currently being serviced. He indicated that when

he called from the repair shop and spoke with courthouse personnel, he was told to call back in an hour or so. The juror then telephoned work. His employer permitted a co-worker to come to the repair shop and transport the juror to work, but would not allow the co-worker to transport the juror to the courthouse. The juror indicated he did not know the court could send a sheriff's car for him that morning, and if he had known, he would have requested it. The juror's explanation was confirmed.

Herring contends the court erred in failing to investigate before dismissing and replacing the juror or to wait to hear directly from the juror regarding his situation, and that no good cause was established to excuse the juror.

OCGA § 15-12-172 provides: "If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated."

This Code section implicitly authorizes the trial court to exercise its discretion. *Baptiste v. State*, 190 Ga. App. 451, 453 (2) (379 SE2d 165) (1989). But it must be an informed exercise, *Scott v. State*, 219 Ga. App. 798, 799 (2) (466 SE2d 678) (1996), since "the erroneous replacement of a juror may under certain circumstances deprive a defendant of his valued right to have his trial completed by a particular tribunal, his sixth amendment right to a fair, impartial and representative jury, and his due process rights grounded in the entitlement to procedures mandated by state law." *Peek v. Kemp*, 784 F2d 1479, 1483 (2) (11th Cir. 1986). See also *United States v. Jorn*, 400 U. S. 470, 484 (II) (91 SC 547, 27 LE2d 543) (1971). " 'There must be some "sound" basis upon which the trial judge exercise(s) his discretion' to remove the juror. [Cit.] Dismissal of a juror 'for want of any factual support, or for a legally irrelevant reason' is prejudicial. [Cit.]" *Green v. Zant*, 715 F2d 551, 555 (11th Cir. 1983).

The court did not abuse its discretion. It had no information at the time the trial was set to proceed as to where the juror was, how long he would be without transportation, or when he would be able to return to court. Information discovered after replacement, that the juror would have been able to continue serving if the sheriff fetched him, does not change this conclusion. The court did not have to keep everyone waiting (beyond the 35 minutes they did wait) for an indeterminate period of time for the juror to report.

This is not a situation where the jury was deadlocked or had begun deliberations, when the need for investigation and the possibility of harmful error are heightened. See *Hill v. State*, 263 Ga. 37, 41 (8) (427 SE2d 770) (1993); *Scott*, supra; *Stokes v. State*, 204 Ga.

App. 141, 142 (1) (418 SE2d 419) (1992). Herring "has not shown how he was prejudiced by the use of an alternate, since pursuant to OCGA § 15-12-169 alternates are selected in the same manner and must have the same qualifications as members impaneled as the jury. 'The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review.' [Cit.]" *Forney v. State,* 255 Ga. 316, 317 (1) (338 SE2d 252) (1986). Replacing the juror "had no more effect of denying [Herring] a qualified jury than if the juror had become ill or died. The alternate juror statute was designed to alleviate situations such as these." *Neal v. State,* 160 Ga. App. 834, 837 (2) (288 SE2d 241) (1982).

2. The second enumeration is that the court allowed the State to violate *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), in failing to disclose certain memoranda of meetings the prosecutor had with Mrs. Herring before her testimony at Herring's bond reduction hearing and at trial, and that the court erred in denying his motion for mistrial on this ground.

Mrs. Herring testified at the bond hearing, when it was possible Herring would gain release, that she voluntarily went to the car with her husband and that he struck her in self-defense and only to avoid an accident after she grabbed the steering wheel. Bond was set at $30,000 cash. Herring was unable to post bond. At the hearing on the motion for reduction, Mrs. Herring testified that she did not voluntarily get into the car, nor did Herring strike her in self-defense or to avoid having a crash.

Herring argues that an important component of his defense was the victim's inconsistent sworn testimony. He contends one basis for the change in testimony between the original bond hearing and the bond reduction hearing was the pendency of a forgery case prosecution by the same district attorney's office. Although the investigating officer recommended indictment, Mrs. Herring's case had not been prosecuted by the time her husband's case came to trial.

Herring learned of meetings between the prosecutor and Mrs. Herring during trial after an in camera inspection of the State's file, when the court supplied Herring with copies of documents discussing the forgery case and the decision to dismiss it. Herring argues he was harmed because the jury could not hear about the meetings relating to the disposition of the charges against Mrs. Herring, which would have caused her to change her testimony and affected her credibility. He maintains he was further harmed by the court quashing the subpoena served on the prosecutor in an attempt to elicit this evidence

for the jury to consider in evaluating her credibility.

Herring cites *Hines v. State*, 249 Ga. 257, 259-260 (2) (290 SE2d 911) (1982), in which the Supreme Court determined from its reading of *Davis v. Alaska*, 415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1974), that the state and federal constitutions guarantee to a criminal defendant a specific right to cross-examine a key State's witness concerning pending criminal charges against that witness, since, on a subconscious level, he may be shading the testimony in an effort to please the prosecution. Herring argues he was entitled to a thorough and sifting cross-examination, OCGA § 24-9-64, to fully explore the possibility of Mrs. Herring's cloudy perceptions and biases.

No *Brady* violation occurred, since the materials were made available to Herring during trial. *Brady* does not require pre-trial disclosure of materials sought by the defendant. *Dennard v. State*, 263 Ga. 453, 454 (4) (435 SE2d 26) (1993). Herring must show that earlier disclosure would have benefited him and that the delayed disclosure deprived him of a fair trial. Id.

*Hines* is inapposite since the record shows counsel was permitted vigorous cross-examination of Mrs. Herring, including questioning her about the pending forgery investigation, the change in her testimony, and meetings she had with the prosecutor. Further, Herring declined the court's offer of the opportunity to recall Mrs. Herring.

3. Herring next contends the court contravened OCGA § 24-2-2 by admitting evidence of prior domestic violence by Herring towards his wife to show course of conduct and bent of mind, when the prior incidents were not sufficiently similar to the incidents on trial. This case is similar to *Bohannon v. State*, 208 Ga. App. 576, 579 (2) (b) (431 SE2d 149) (1993), where testimony as to episodes of the accused's past physical abuse of the victim, whom he had been involved with romantically, was admissible as evidence of similar transactions.

As in *Bohannon*, the State satisfied the three-prong test of *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), in a Uniform Superior Court Rule 31.3 hearing at which the State showed that (1) the evidence was proffered not to raise an improper inference as to the accused's character, but for some appropriate purpose recognized as an exception to the general rule of inadmissibility, i.e., Herring's systematic course of conduct in physically abusing his wife and his bent of mind to commit acts of violence against her; (2) Herring committed the prior acts; and (3) there is a sufficient logical connection or similarity between the prior difficulties and the crime charged so that proof of the former tends to prove the latter. Id. at 642, n. 3.

4. Each incident consisted of physical violence by Herring against the same victim. Each occurred during the course of the parties' eight-month marriage. Most, as this one, occurred when Herring

had been consuming alcohol. The fact that they occurred in a variety of places and over different matters did not eliminate their relevance to show Herring's behavior, a manifestation of his bent of mind.

"The rule allowing the admission of similar transaction evidence is usually applied more liberally with evidence of prior attempts by the accused to commit the same crime upon the victim of the offense for which he stands charged. Certain otherwise inexplicable assaults, such as occur in a series of incidents of wife or child abuse, particularly lend themselves to this exception to the 'other offenses' rule on questions of both identity and motive." (Citations and punctuation omitted.) *Parcell v. State,* 198 Ga. App. 439 (1) (401 SE2d 628) (1991). The evidence was properly admitted.

5. Herring next contends the trial court abused its discretion in allowing the State to introduce the similar transaction evidence prior to evidence relating to the charged offenses. He cites *Gilstrap v. State,* 261 Ga. 798 (410 SE2d 423) (1991), in which the Supreme Court found that allowing the prosecutor to introduce nine similar transactions from witnesses other than the victim before introducing evidence concerning the crimes charged raised a substantial possibility the jury could have determined the defendant's guilt solely on the similar transaction evidence. Id. at 799 (2).

*Gilstrap* "expressly declined to determine the limits on the trial court's discretion as to the order of the admission of evidence," since the order of proof is generally within the trial court's discretion and will not be disturbed on appeal absent abuse. (Citations and punctuation omitted.) *Bailey v. State,* 209 Ga. App. 390, 394 (5) (433 SE2d 610) (1993). As in *Bailey,* "the testimony objected to came only from the victim and not other witnesses. . . . [T]he trial court did not abuse its discretion in allowing the victim to testify in chronological order about her abuse even though such a presentation resulted in the admission of . . . similar transaction evidence prior to the evidence on the crimes charged." Id. Mrs. Herring's testimony, in which the episodes of abuse were recounted in chronological order, demonstrated Herring's escalating violence toward his wife, culminating in the most violent assault, the one on trial. Herring accordingly cannot show he was prejudiced or that the court abused its discretion in allowing a logical presentation which gave context to the subject incident.

6. Herring urges error in the imposition of a ten-year sentence for aggravated assault. The State agrees. Verdict was for both kidnapping with bodily injury and aggravated assault. The court noted that the two crimes merge, see OCGA § 16-1-6, and imposed a mandatory sentence of life imprisonment for the kidnapping conviction and, as an alternative to merger, ten years concurrent for aggravated assault "just in case something happens on appeal."

Aggravated assault is a lesser included offense of, and is accordingly merged with, the crime of kidnapping with bodily injury. *George v. State*, 192 Ga. App. 840, 842 (3) (386 SE2d 669) (1989). The aggravated assault sentence is reversed, and the trial court is directed to vacate it.

7. Herring enumerates as error the court's allowing the State to cross-examine him about certain statements he made to police before given *Miranda* warnings, after the court ruled those statements inadmissible at a *Jackson v. Denno* hearing. Although Herring objected, he did not give any particular reason. In order to preserve a ground for error, the objecting party must state the specific ground upon which it is based. "[A]n otherwise valid reason why evidence should not be admitted will not be considered on appeal unless the specific reason was urged below." *Fletcher v. State*, 199 Ga. App. 756, 757 (406 SE2d 245) (1991). Even if the ground was preserved by the *Jackson-Denno* hearing results, Herring suffered no harm because he testified to similar statements he made to his wife on two occasions.

8. Herring maintains the court erred in failing to give his justification defense charges based on OCGA § 16-3-20. The court's lengthy instruction to the jury in this regard was adjusted to the evidence and fully and properly informed the jury as to justification and self-defense. The court was not required to give the exact language of Herring's request when the same principles were expressed in the general charge. *Howard v. State*, 151 Ga. App. 759, 760 (261 SE2d 483) (1979).

9. The final enumeration is that the evidence was insufficient to support the verdict. As Herring recognizes, this Court addresses sufficiency under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). There was ample evidence from which a rational trier of fact could determine Herring's guilt beyond a reasonable doubt of the offenses charged. *Grant v. State*, 195 Ga. App. 463 (393 SE2d 737) (1990).

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 7, 1997 —
RECONSIDERATION DENIED FEBRUARY 25, 1997 — ▮▮▮▮▮

Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer, for appellant.

Daniel J. Porter, District Attorney, Ben L. Leutwyler III, Assistant District Attorney, for appellee.