## A97A2295. NORRIS v. THE STATE.
### (496 SE2d 781)

BEASLEY, Judge.

Norris was convicted of one count each of kidnapping (OCGA § 16-5-40), making a false statement on a matter within the jurisdiction of a city (OCGA § 16-10-20), false imprisonment (OCGA § 16-5-41), and bigamy (OCGA § 16-6-20), two counts of battery (OCGA § 16-5-23.1), and four counts of cruelty to children (OCGA § 16-5-70).

The indictment alleged that Destiny Healey was the victim of the cruelty to children counts, the kidnapping and false imprisonment counts, and one count of battery; that Rebecca Lyn Carlton was the victim of the other count of battery; that the false statement was made by Norris to a police officer during an investigation into the whereabouts of Destiny Healey; and that Norris committed bigamy by being married both to Rebecca Lyn Carlton and Molly Reeve.

The State's evidence showed that Kathy Healey moved into Norris' trailer along with her daughter Destiny after dating Norris for a brief period. Norris was "real nice" at first but soon became very controlling and physically abusive to both Kathy and the child. Initially, he became angry at Kathy and physically assaulted her because he thought she was going to leave him. His abuse of Kathy included hitting her, choking her almost to the point of asphyxiation, pulling her hair, and cutting her hair in a fit of jealousy so as to make her unattractive to other men. He physically abused Destiny in a multitude of ways. During these periods of abuse, Norris physically prevented Kathy and Destiny from leaving the trailer. At other times, he

threatened to kill them, as well as members of their family, if they attempted to leave. On the occasion of the first visit of Kathy's parents, Norris was "nice," but later attempts by family members to visit were fruitless because Norris forced Kathy and Destiny to pretend they were not home.

Rebecca Lyn Carlton, sworn as a State's witness under the name Rebecca Lyn Norris, testified she was Norris' wife. He was "really nice" to her during their brief courtship, but when they married, he began hitting and choking her and pulling and cutting her hair.

1. Norris challenges the overruling of his objection to the admission of similar transaction evidence.

The State sought to introduce such evidence to show a pattern of physical and mental abuse by which Norris intimidated women into remaining with him, thereby rebutting the defense that Kathy Healey had voluntarily remained in the parties' relationship. Norris objected on grounds that the other transactions were not sufficiently similar in nature and that they would improperly place his character into evidence and unduly prejudice the jury against him.

The testimony of the eleven similar transaction witnesses showed the following basic pattern of conduct by Norris toward seven other women: At the beginning of their relationship, he was very pleasant to them; after dating six of them for a brief period, he either began living with or married them; he would then become very jealous, controlling, and physically abusive; the physical abuse included hitting, choking, hair cutting, and in some instances abuse of children; he prevented some of the women from seeing their families; and he prevented all of them from leaving by threatening to harm or kill them and/or their families.

The similar transactions were of sufficient similarity to the crimes charged so that the court did not err in admitting evidence of them for the limited purpose of showing a course of conduct by Norris, evincing the same pattern of abusive behavior toward women with whom he had an intimate relationship, which tended to prove criminal intent. See *Jackson v. State*, 226 Ga. App. 604, 606 (1) (487 SE2d 142) (1997) and cits.; compare *McGee v. State*, 267 Ga. 560, 562 (2) (480 SE2d 577) (1997). "The fact that the evidence might incidentally place appellant's character in evidence does not destroy its admissibility as a similar transaction. . . . [Cits.]" *Willis v. State*, 214 Ga. App. 479, 480 (3) (b) (448 SE2d 223) (1994). As in *Willis*, it was not error to determine that relevance outweighed prejudicial effect.

2. Norris moved for mistrial, on the basis of OCGA § 24-9-20 (b), when testimony was given by a Coast Guard investigator and later by a similar transaction witness showing Norris was a military deserter.

The investigator testified concerning injuries Norris inflicted on the similar transaction witness and his resulting conviction of assault in a military court. When the investigator was asked how he knew Norris, he responded that he was assigned to locate Norris after Norris was declared a deserter from the Coast Guard. Norris sought a mistrial on the ground the State improperly placed his character in issue by evidence of an independent dissimilar crime. The court denied the motion but instructed the jury to disregard the testimony.

The second motion for mistrial was made after the similar transaction witness gave an unresponsive answer to a question of the prosecuting attorney which also showed Norris had gone AWOL from the Coast Guard. The court denied this motion as well and again instructed the jury to disregard the testimony.

The Coast Guard investigator's connection with Norris was relevant to explain how he learned of the assault on the similar transaction witness. The inadmissible fact was not elicited by the State, was only briefly referred to, and was not focused on except in the context of excising it immediately from the body of evidence for the jury to consider. The court did not abuse its discretion in determining that the testimony regarding the investigator's reason for investigation was not so prejudicial as to warrant a mistrial. See generally *Freese v. State*, 196 Ga. App. 761, 762-763 (1) (396 SE2d 922) (1990); *Nowlin v. State*, 225 Ga. App. 447, 450-451 (5) (414 SE2d 14) (1997). A limiting instruction was sufficient. *Maxwell v. State*, 262 Ga. 73, 76 (4) (414 SE2d 470) (1992). The same is true for the other mention of it.

3. Norris urges that his convictions of false imprisonment and kidnapping should have been merged, but they were based on different conduct on separate occasions. False imprisonment was the confinement of Destiny Healey in Norris' trailer, and the kidnapping was Norris' abduction of her in an automobile. "In [such] circumstances, false imprisonment does not merge with kidnapping either as a matter of fact or as a matter of law. . . ." *Johnson v. State*, 195 Ga. App. 723, 724 (2) (394 SE2d 586) (1990); compare *Massey v. State*, 265 Ga. 632 (1) (458 SE2d 818) (1995).

4. Norris contends the evidence was insufficient to support the conviction of bigamy because: (a) there was no evidence that would support an inference of knowledge by Norris that his marriage to Molly Reeve had not been dissolved and (b) his supposed marriage to Rebecca Lyn Norris was based solely on her testimony that they married in August 1992. She did not identify the date or location of the marriage, nor was a certified copy of a marriage certificate presented.

(a) "In a prosecution for bigamy the State makes out a prima facie case by proving the first marriage, and that while the first

spouse was living the defendant contracted a second marriage, knowing that the first marriage had not been dissolved by death or divorce; and the knowledge need not be shown by direct evidence, but may be inferred from circumstances." *Robinson v. State*, 6 Ga. App. 696 (1) (65 SE 792) (1909); see OCGA § 16-6-20 (a).

Molly Reeve testified that she and Norris entered into a ceremonial marriage in January 1992. Initially she testified that she did not obtain a divorce because she could not locate Norris. Later she explained that although she did initiate a divorce action, she did not attend a hearing because she did not receive timely notice of it, and she did not have sufficient funds to pursue the matter further. A rational trier of fact could infer that Norris knew he and Reeve had not been divorced.

(b) To prove bigamy, "it is necessary to establish the marriage either by the record thereof, or by the admission of the defendant, or by the testimony of some one who saw the ceremony performed, or by such other evidence as will clearly establish the fact." *Arnold v. State*, 53 Ga. 574 (1875). Thus, the testimony of one of the participants in the marriage ceremony is sufficient to prove the marriage. See 36 AmJur 465, Proof of Facts, § 10 (1983). Production of the marriage certificate is not necessary. Id. If the location and exact date of the marriage are not provided by the witness on direct examination, defendant may inquire into such matters during cross-examination.

5. The final issue involves dismissal of a juror from deliberations. The juror had responded in the negative to a voir dire question by the State concerning whether any panel members had been involved in an abusive relationship. During deliberations he informed other jurors that he had been assaulted by women on prior occasions, and he displayed a scar.

" 'OCGA § 15-12-172 authorizes the trial court to replace a juror who "dies, becomes ill, upon other good cause shown to the court is found to be unable to perform (his) duty, or is discharged for other legal cause." . . .' [Cit.]" *Stokes v. State*, 204 Ga. App. 141 (1), 142 (418 SE2d 419) (1992). "Under OCGA § 15-12-172, the trial court has discretion to discharge a juror and replace him or her with an alternate at any time, and we will not reverse as long as the court's exercise of discretion has a sound legal basis. [Cits.]" *Darden v. State*, 212 Ga. App. 345, 347 (4) (441 SE2d 816) (1994).

It was not an abuse of discretion to conclude that the juror's failure to respond truthfully during voir dire, coupled with his admitted actions during jury deliberations, constituted legal cause for removal. See *McGuire v. State*, 200 Ga. App. 509, 510 (3) (408 SE2d 506) (1991); see also *Worthy v. State*, 223 Ga. App. 612, 613 (1) (478 SE2d 421) (1996); compare *Gardiner v. State*, 264 Ga. 329, 333 (4) (444 SE2d 300) (1994). Further inquiry into the juror's ability to be fair

and impartial was not required. Bias was already evident. See *McGuire*, supra; compare *Scott v. State*, 219 Ga. App. 798 (2) (466 SE2d 678) (1996); *Maxwell v. State*, 218 Ga. App. 780 (1) (463 SE2d 517) (1995).

*Judgment affirmed. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 9, 1998.

*Kenneth W. Krontz*, for appellant.

*Peter J. Skandalakis, District Attorney, Christopher J. Adams, Kevin W. Drummond, Assistant District Attorneys*, for appellee.