A05A0222. ARNOLD v. THE STATE.
(617 SE2d 169)

BERNES, Judge.

A Lowndes County jury found George Arnold guilty of selling cocaine in violation of the Georgia Controlled Substances Act, OCGA § 16-13-30. Raising several enumerations of error, Arnold appeals from his conviction and the denial of his motion for a new trial. Because the trial court committed prejudicial error by removing a juror solely on the ground that he used offensive language during jury deliberations, we hold that Arnold's conviction must be reversed and that he is entitled to a new trial.

1. Arnold contends that there was insufficient evidence to support his conviction. Once a jury verdict has been rendered, the defendant "no longer enjoys the presumption of innocence." *Gordian v. State*, 261 Ga. App. 75, 76 (1) (581 SE2d 616) (2003). Thus, we review the evidence in the light most favorable to the verdict, and we neither assess the credibility of the witnesses nor weigh the evidence. *Green v. State*, 244 Ga. App. 565 (1) (536 SE2d 240) (2000).

Viewed in this light, the evidence shows as follows. In July 2002, agents with the Narcotics Division of the Lowndes County Sheriff's Office procured the assistance of an informant to make a purchase of cocaine. The agents searched the informant to make sure he had no contraband on his person, wired him with audio and video and provided him with money to make the purchase. The agents instructed the informant to make the drug purchase from a red brick duplex at the corner of Troupe and Rogers Street. The informant then traveled to the duplex where Arnold sold the informant $20 worth of cocaine.

Immediately after completing the purchase, the informant returned to the location where the agents were waiting for him. The informant turned the cocaine over to one of the agents, who bagged the cocaine and marked it for identification purposes. The cocaine was subsequently transported to the crime laboratory where scientific analysis confirmed that the substance sold by Arnold was in fact cocaine.

We conclude that the evidence presented by the State, when viewed in the light most favorable to sustain the verdict, was sufficient to permit a rational factfinder to conclude that Arnold was guilty beyond a reasonable doubt of selling cocaine. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accordingly, we reject Arnold's contention that there was insufficient evidence to support his conviction.

2. Arnold argues that the trial court erred by removing a juror during the course of jury deliberations. On the first day of jury deliberations, the jury sent a note to the trial court indicating that they were deadlocked after less than two hours of deliberating. The trial court called the jury back into the courtroom and stated:

> You shouldn't be too concerned about being deadlocked this early in the game, because it's not unusual for juries to have to deliberate for some period of time in regard to reaching a verdict in a case, but I think your suggestion about maybe going home and think[ing] about it is a good one.

The trial court then adjourned the proceedings and instructed the jury to report for duty the following morning.

The jury returned the next morning and recommenced deliberations. However, during the course of those deliberations, an individual juror inquired of the trial court whether there had been a question asked during voir dire concerning whether panel members believed they could enter the jury room on a fair and impartial basis. After the court answered in the affirmative, the jury requested that the trial court provide them a copy of the statutory voir dire questions

that had been asked of them before the trial commenced. The trial court also received a note requesting that a new jury foreman be appointed.

After obtaining the approval of counsel for the State and the defense, the trial court provided the jury with a written copy of the voir dire questions. The trial court also advised the jury that it was up to them to appoint a new jury foreman if they saw fit, and that the court would not get involved in that process.

That afternoon, the trial judge received an additional note from one of the jurors that stated: "Any juror especially the foreman who tells another juror to go to hell should be removed!" After apprising counsel of the contents of the note, the trial court stated that it was his understanding that "the numerical division is 10-2" among the jurors, leading to a deadlock.[1] The court further noted: "Obviously, if the foreman is removed this would make it 9-2 or 10-1, so at this point it appears that the court has several options, none of which are really particularly satisfactory."[2] Defense counsel responded that she did not believe that the use of offensive language served as a sufficient basis to remove a juror and that the deadlock among the jurors justified a mistrial. Specifically, defense counsel stated: "I think the whole situation demands a mistrial . . . but I just don't think we can start kicking off jurors who disagree with the other jurors." However, after further discussion, counsel for the State and the defense agreed that the jury foreman should be brought into court so that the trial court could question him about the incident.

The following exchange occurred between the trial court and the foreman:

> THE COURT: Mr. Foreman, it has been reported to the Court that at some time since you and the other members of the jury arrived this morning that you told another juror to go to hell. First of all, is that correct or incorrect?
> JURY FOREMAN: I can't remember saying it, but what it is we got in a heated argument with them trying to sway us one way or the other, and I can't remember. I might have said it, you know. I told her if she didn't like it she could get out, you know, leave, you know.
> THE COURT: All right, sir. Well, obviously one juror telling another to go to hell, even in the face of a heated argument, I think you would have to agree, is totally improper behavior.

---

[1] It is unclear from the record how the trial court knew at that point in the proceedings that the division among the jurors was 10-2.

[2] Counsel for the State and the defense previously had stipulated that if the trial court had to dismiss a juror, the case could be tried by a jury of "less than twelve but not less than ten."

JURY FOREMAN: Yeah, I tried to handle it the best way I knew how, and you know they are trying to make us sway one way or another, and the people just refuse to budge so if they want another chairperson that's fine, you know.

During the course of the questioning, the jury foreman also explained why he believed the jury had requested a copy of the statutory voir dire questions, including a copy of the question that concerned juror impartiality:

[During our deliberations] [a]nother [juror] said he was locked up in jail for two days, he was innocent, so he believed that the police sometimes it's not always fair, and I told him well I had an incident the same way too where I got picked up for drunk driving, I never drank, and I took the blood test and everything and it came out positive that I never drank, so why are they using that to say that I'm being impartial? I'm not, you know, I give everything a fair trial based on the evidence and what I seen, but they're just trying to use that to discredit my opinion, you know.

The trial court then informed the foreman that he could return to the jury room.

It is clear from the record that the trial court and counsel interpreted the foreman's statements as indicating that he was likely one of the two holdout jurors.[3] A discussion between the trial court and counsel regarding the appropriate course of action then ensued in which the trial court stated:

Well, unfortunately, and with a great deal of regret and frustration, I tend to think that at this point the problem is unsalvageable. I think it has probably deteriorated to the point where there's not going to be any real salvageability out of it, based upon his statement. Some other individual feels that he's had a bad shake by the police at some point. While none of the three of us would jump to that conclusion, I'm sure that the other juror who feels that he's gotten a bad shake out of the police is also going to feel that the Court was railroading something if we remove the foreman. So with the assent of counsel, the Court will bring the jury in, and if you desire that I do so, I will ask the necessary questions

---

[3] The prosecutor stated: "I think this juror has his set opinion, and he's feeling the majority against him. If he's one of the two, I don't think he's going to change his mind."

whether or not they have appeared to reach a deadlock, whether or not they think further negotiations would be fruitful, whether or not there's any possibility of reaching a verdict, and then depending upon their answers, we'll determine whether a mistrial should be granted.

After counsel for the State and the defense agreed that it was likely the trial court would need to declare a mistrial, the trial court called in the jury for questioning.

After the jury had returned to the courtroom, the trial court asked the jury foreman several questions concerning the jury's deliberations:

THE COURT: Members of the Jury, the Court has received some indication that you have been at approximately 10-2 division since this morning. Are you still at a 10-2 division?
JURY FOREMAN: Yes, sir.
THE COURT: Do you think that any further negotiations would result in a change in that division?
JURY FOREMAN: No, sir.
THE COURT: Do you think, then, that there is any possibility of reaching a unanimous verdict in this case?
JURY FOREMAN: There's always a possibility. There's always a possibility going one way or the other, guilty or not guilty, so just because the majority is favoring one way it could go the other way, so it's always a possibility.
THE COURT: Has there been a change in your division since this morning?
JURY FOREMAN: No, sir. I think it's reaching the stage where, you know, people are getting a little sensitive, touchy, and I think we are shouting at each other a little bit, so I think we're at the argumentative stage, so it's getting to that point now.
THE COURT: All right. . . . Do you think that any further discussions would reasonably be fruitful or productive?
JURY FOREMAN: I don't think so, sir. People seem pretty set at yes or no, so people are set in their minds and I don't think they're going to change it.

However, at that point, a female juror spoke up and addressed the trial court:

If you had one of these twelve people that is cursing and using curse words, humiliating not even — not — more than one but more than one juror by cursing at them, saying that

you're monkeys, you're stupid and a few other things, can that person be dismissed and another person join us?

She also referred to the "cursing" as "verbally abusive." The female juror never identified which juror to whom she was referring. The trial court did not inquire further from the female juror but simply informed her that a new jury member could not be impaneled at that point in the proceedings. Without ascertaining any further information,[4] the trial court then instructed the jury to return to the jury room.

Once the jury had left the courtroom, counsel for the State moved to have the jury foreman dismissed from service based on counsel's contention that the female juror's comments indicated that the foreman was attempting to "force through intimidation his opinion on other people." Counsel for the State also asserted that the 10-2 jury split was not a "true split" but rather was "the subject of coercion, not true discussion." In response, defense counsel voiced her strong objection to the removal of the foreman, particularly given the 10-2 split. Defense counsel argued that there had not been sufficient investigation into the matter by the trial court and that other jurors may have made similar offensive remarks during the heated deliberations.

After hearing from counsel, the trial court called the jury foreman back into the courtroom and dismissed him based *solely* on his "use of vulgar and disparaging language." Sixteen minutes after the jury recommenced its deliberations following its appointment of the female juror as its new foreman, the jury returned a verdict of guilty.

A trial court may dismiss a juror who for "good cause shown to the court is found to be unable to perform his duty." OCGA § 15-12-172. In deciding whether the trial court properly dismissed a juror, we review for an abuse of discretion. *Herring v. State*, 224 Ga. App. 809, 811 (1) (481 SE2d 842) (1997). However,

> it must be an informed exercise [of discretion], *Scott v. State*, 219 Ga. App. 798, 799 (2) (466 SE2d 678) (1996), since "the erroneous replacement of a juror may under certain circumstances deprive a defendant of his valued right to have his

---

[4] After hearing from the female juror, the trial court also informed her that she was describing conduct by a juror that was "totally inappropriate" and that "some action could possibly be taken in that regard." The trial court then asked the other jurors: "Members of the Jury, do any of the rest of you have a question for the Court, or do you have anything that you would like to address the Court on at this point?" None of the jurors responded to the trial court's question. The trial court did not conduct any further inquiry.

trial completed by a particular tribunal, his sixth amendment right to a fair, impartial and representative jury, and his due process rights grounded in the entitlement to procedures mandated by state law." *Peek v. Kemp*, 784 F2d 1479, 1483 (2) (11th Cir. 1986). See also *United States v. Jorn*, 400 U. S. 470, 484 (II) (91 SC 547, [556-557,] 27 LE2d 543) (1971). " 'There must be some "sound" basis upon which the trial judge exercise(s) his discretion' to remove the juror. [Cit.] Dismissal of a juror 'for want of any factual support, or for a legally irrelevant reason' is prejudicial. [Cit.]" *Green v. Zant*, 715 F2d 551, 555 (11th Cir. 1983).

Id. Furthermore, after deliberations have begun, and if the jury has become deadlocked, there is a heightened need for vigilance by the trial court to ensure that a juror is not removed for improper reasons. *Hill v. State*, 263 Ga. 37, 41 (8) (427 SE2d 770) (1993); *Herring*, 224 Ga. App. at 811-812 (1). This is particularly true when the juror at issue is a holdout subject to pressure from majority jurors, since "[t]he fact that the juror reached a conclusion different from that of the other jurors [does] not render the juror incapacitated." *Mason v. State*, 244 Ga. App. 247, 249 (1) (535 SE2d 497) (2000). See also *Stokes v. State*, 204 Ga. App. 141, 141-142 (1) (418 SE2d 419) (1992).

With these principles in mind, we conclude that the trial court abused its discretion in removing the jury foreman based solely on his use of offensive language during heated jury deliberations. See *Sears v. State*, 270 Ga. 834, 841 (3) (b) (514 SE2d 426) (1999) (heated exchange between jurors in which one juror accused another of perjury did not constitute juror misconduct in light of the fact that "belligerent exchanges in the course of deliberations often accompany the heightened atmosphere in the jury room").[5] See also *Riggs v. State*, 809 NE2d 322, 328 (Ind. 2004) (rudeness and intransigence of juror did not provide basis for removal); *People v. Redd*, 164 AD2d 34, 37 (N.Y. App. Div. 1990) (holding that "complaint stemming from escalated tempers and of obscenities shouted by the foreman" were insufficient to establish jury misconduct). While we certainly do not condone the use of vulgar or coarse language among jurors, "total placidity is not the nature of jury deliberation." *United States v. Tallman*, 952 F2d 164, 167 (8th Cir. 1991). As one court has explained,

---

[5] In *Sears*, 270 Ga. at 839-840, the Court also held that the death sentence rendered by the juror was the result of the " 'normal dynamics of jury deliberations,' " even though the juror testified she felt intense pressure from the other jurors and that the other jurors had accused her of perjury, yelled at her, insulted her character, ostracized her and " ' basically made [her] change [her] mind.' "

We appreciate that tempers may flare in jury deliberations, and that personality conflicts may arise. Conscientious jurors work through such problems without outside assistance all the time, and they are expected to do so.

*Shotikare v. United States*, 779 A2d 335, 346 (D.C. 2001).

While removal of a juror upon a showing of physical confrontation may be permissible, there was no testimony in this case from any of the jurors indicating that the jury foreman had physically threatened any juror. See *Sears*, 270 Ga. at 841 (3) (b) (contrasting belligerent exchange between jurors with situation where juror attempts to physically harm another juror). See also *Shotikare*, 779 A2d at 347 (juror properly removed who threatened violence against other juror); *People v. Lavender*, 117 AD2d 253 (N.Y. App. Div. 1986) (trial court should have removed juror who threatened another juror with assault). Nor was there any testimony indicating that the jury foreman's use of coarse language was so harassing or coercive that it was preventing the jury from deliberating any further. The testimony of the female juror indicated only that a juror, ostensibly the foreman, used vulgar and insulting language during deliberations, and the use of such language was all the trial court relied upon in dismissing the jury foreman. Without more, dismissal of the jury foreman was inappropriate.

This is particularly true here, where the trial court did not make any attempt to have the issue resolved by taking less drastic measures. For example, the trial court specifically could have charged the jurors to act in a conscientious manner toward one another and show proper regard and deference to the opinions of their fellow jurors. Cf. *Mayfield v. State*, 276 Ga. 324, 330 (2) (b) (578 SE2d 438) (2003) (trial court did not err by giving *Allen* charge after "[t]he jury had spent substantial time unsuccessfully attempting to resolve dissension on the remaining charges and the stalled deliberations had become heated to the point of the threat of physical violence").[6]

The State contends that Arnold waived any objection he might have had to the removal of the jury foreman by virtue of a pretrial stipulation noted on the record by the trial court:

---

[6] The trial transcript reflects that only a short time period elapsed between when the trial court interviewed the jury foreman individually and when the trial court called the entire jury back into the courtroom to ascertain whether a mistrial should be declared. Given that context, the record does not reveal whether the female juror's comments to the trial court were a description of behavior that occurred *before or after* the trial court had spoken with the jury foreman and admonished him for his use of coarse language. Thus, it is far from clear that the trial court gave the jury foreman an opportunity to rectify his conduct after interviewing him about his use of coarse language during the course of heated jury deliberations.

It's further the Court's understanding that it has been stipulated and agreed that this case can be heard and determined by a number less than twelve but not less than ten should the Court in its sole discretion find it necessary or desirable to excuse one or two jurors prior to complete deliberation and return of the verdict.

The State contends that the stipulation gave the trial court unfettered discretion to remove up to two jurors during the course of the proceedings. As an initial matter, we note defense counsel objected to the removal of the foreman and specifically indicated on the record (without any further comment from counsel for the State on the issue) that the parties never intended for the stipulation to foreclose such an objection.

The purpose of the stipulation clearly was to avoid the need for the trial court to appoint alternate jurors by agreeing that the case could be heard by less than 12 jurors.[7] See *Hudson v. State*, 250 Ga. 479, 482-484 (3) (a) (299 SE2d 531) (1983) (discussing waiver of right to 12 jurors). Although the parties stipulated that the trial court would have "sole discretion" to excuse up to two jurors, by doing so, counsel did nothing more than restate existing Georgia law, under which a trial court is entitled to "exercise its discretion" in deciding whether to remove a juror. *Herring*, 224 Ga. App. at 811 (1). But, as we have emphasized, that exercise of discretion must be an informed one and is subject to reversal if it is abused. See id. The reference in the parties' stipulation to the trial court's discretion does nothing to eviscerate that baseline principle.

In addition, we note that "[p]arties may stipulate anything factual, and may sometimes waive the benefit of statutory or constitutional provisions, but they cannot by stipulation fix or change the law." (Citation omitted.) *Heavey v. Security Mgmt. Co.*, 129 Ga. App. 83, 84 (198 SE2d 694) (1973). In light of this rule, we have indicated that — if possible based on the language agreed to by the parties — a stipulation should "not be construed in such a manner as to 'fix or change the law.'" (Citation omitted.) *Gold Kist Peanuts v. Alberson*, 178 Ga. App. 253, 255 (2) (342 SE2d 694) (1986).[8]

---

[7] Defense counsel stated the purpose of the stipulation was to allow the case to continue "if some kind of medical emergency came up or some accident or impossibility."

[8] In *Gold Kist Peanuts*, the parties had stipulated that the trial court "would decide and determine the question of interest, if interest was owed, and if so on what sum, from what date at what rate of interest." *Gold Kist Peanuts*, 178 Ga. App. at 255 (2). When the trial court awarded prejudgment interest under the incorrect statute, we refused to construe the stipulation as changing the circumstances under which that statute applied, because to do so would allow the stipulation in effect to change the law of when prejudgment interest could be obtained under that statute. Id. at 255-256 (2). Accordingly, we reversed the trial court's award of

Accordingly, we will not construe the stipulation here as an attempt by the parties to change the law of when a juror may be properly removed. If the State's interpretation of the stipulation were allowed to stand, it would read out of OCGA § 15-12-172 the "good cause" requirement for removing a juror and would have authorized the trial judge to dismiss a juror for any reason whatsoever, including mere disagreement with other jurors over the correct verdict. We decline to interpret the stipulation so broadly.

For these reasons, we conclude that the trial court erred in removing the foreman from the jury after deliberations had commenced based solely on his use of offensive language, when there was no evidence of physical threat, and when the court failed to take less drastic curative measures in the first instance to alleviate the problem. Such an error was prejudicial, requiring reversal of Arnold's conviction and a new trial. *Herring*, 224 Ga. App. at 811 (1); *Stokes*, 204 Ga. App. at 142 (1).

3. Of Arnold's remaining enumerations, we will address those that are capable of recurring on retrial and that have been properly preserved. *Roberson v. State*, 214 Ga. App. 208, 210 (5) (447 SE2d 640) (1994). Arnold asserts that the trial court erred in admitting impermissible character evidence. The videotape of the drug transaction was introduced into evidence and played for the jury at trial. One of the narcotics agents identified Arnold as the individual in the videotape selling the cocaine to the informant. Prior to eliciting the identification testimony, the prosecutor asked the agent if he had "been familiar with Mr. Arnold prior to this occasion." The agent responded "yes," and defense counsel then objected and moved for a mistrial contending that the challenged evidence implied that Arnold had previously been engaged in criminal conduct.

Contrary to Arnold's complaint, "[t]he statement that the officer knew [him] does not, in and of itself, place his character in evidence by raising an inference that [Arnold] is a malefactor or criminal." (Citation omitted.) *Choat v. State*, 246 Ga. App. 475, 478 (3) (540 SE2d 289) (2000). The prosecutor's question excluded any reference to the manner in which the officer previously made Arnold's acquaintance and went solely to the issue of identification. Thus, this allegation of error is without merit.

4. Arnold next claims that the chain of custody was insufficient to permit the introduction of the cocaine as evidence. He emphasizes that there was a two-day discrepancy between the date upon which

---

prejudgment interest, despite the "seeming breadth of the stipulation" that potentially could have been construed as granting unfettered discretion to the trial court over how to determine interest. Id. at 255 (2).

the evidence custodian testified he hand-delivered the bagged substance to the GBI crime lab and the date upon which the chemist testified the lab received it. Yet, we find the State adequately met its burden "to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution." (Citation and punctuation omitted.) *Shivers v. State*, 188 Ga. App. 744 (1) (374 SE2d 233) (1988). By the identifying marks on the packaging, it was established through testimony from several witnesses that the substance which tested positive for cocaine and which was introduced at trial was the substance purchased from Arnold, double bagged by the Narcotics Division investigator, placed in the evidence locker, retrieved and transported to the GBI crime lab, and subjected to testing by that lab. Accordingly, while a small discrepancy between specific dates may exist, the identity of the evidence itself was preserved. Id. "When there is only a bare speculation of tampering [or substitution], it is proper to admit the evidence and let what doubt remains go to the weight." (Citation and punctuation omitted.) *Anderson v. State*, 247 Ga. 397, 399 (2) (276 SE2d 603) (1981).

5. Arnold contends that he received untimely notice of the State's intent to have him sentenced as a recidivist. The State served Arnold with notice of its intent to seek recidivist punishment on October 28, 2002, and the notice detailed the prior convictions upon which recidivism would be grounded. The case was tried in January 2003. This significant advance warning before trial that the State would be using the prior convictions against him at sentencing renders meritless Arnold's claim that the notice was untimely. OCGA § 17-10-2 (a); *Anderson v. State*, 199 Ga. App. 559, 560-561 (3) (405 SE2d 558) (1991).

6. Arnold failed to properly preserve his remaining enumerations of error. He failed to preserve his claim that the trial court erred by admitting still photographs taken from the videotape by not objecting at trial on the specific ground he attempts to raise and argue on appeal. See *Weaver v. State*, 179 Ga. App. 641, 642 (7) (347 SE2d 295) (1986). He also failed to preserve his objection to testimony concerning the field testing of the cocaine because "[a]n objection to evidence that 'the foundation has not been laid' for the question without stating what the proper foundation should be is insufficient to raise an issue for review." (Citation omitted.) *Armstrong v. State*, 160 Ga. App. 237, 238 (3) (b) (286 SE2d 523) (1981).

*Judgment reversed. Smith, P. J., and Ellington, J., concur. Adams, J., concurs in Divisions 1, 3, 4, 5 and 6 and in the judgment only as to Division 2. Andrews, P. J., Blackburn, P. J., and Miller, J., dissent.*

BLACKBURN, Presiding Judge, dissenting.

Because the record unequivocally shows that the trial court had a sound legal basis for dismissing one juror who cursed at and demeaned other jurors, our standard of review mandates a finding that the trial court did not abuse its discretion in this case. As such, I respectfully dissent from Division 2 and must therefore dissent from the judgment reached by the majority.

In cases such as this, our longstanding standard of review requires us to defer to the trial court's discretion in excusing a juror for cause. A trial court, in its discretion, may dismiss a juror who for "good cause shown to the court is found to be unable to perform his duty," or may dismiss a juror for "legal cause." OCGA § 15-12-172. " 'Under OCGA § 15-12-172, the trial court has discretion to discharge a juror and replace him or her with an alternate at any time, and *we will not reverse as long as the court's exercise of discretion has a sound legal basis.'* " (Citation omitted; emphasis supplied.) *Norris v. State.*[9] Where the defendant has agreed to be tried by less than 12 jurors if a juror is dismissed, the trial court may in the exercise of this discretion dismiss a juror for good cause and allow the proceedings to continue with only 11. *Baptiste v. State.*[10]

The sound legal basis here was the juror's unabashed cursing (which he only reluctantly and evasively conceded) of other jurors in an attempt to browbeat those jurors into agreeing with his point of view. Indeed, this juror also humiliated other jurors by calling them "monkeys," "stupid," "and a few other things." Contrary to the court's instruction to decide the case based on the evidence presented, this juror's tactic of verbal abuse to intimidate other jurors to change their opinions perverted the deliberative process and was clearly sufficient grounds for the court to exercise its discretion to dismiss the offending juror. See *Mayfield v. State*[11] ("[c]ertainly, a juror's refusal [during deliberations] to decide the case on the evidence under the law as charged by the court would provide legal cause for that juror's removal"); *Thompson v. State*[12] (court may consider totality of circumstances in dismissing holdout juror who was connected to attempt to subvert the jury); *Wooten v. State*[13] (juror's failure to respond truthfully was grounds for dismissing juror during deliberations);

---

[9] *Norris v. State*, 230 Ga. App. 492, 495 (5) (496 SE2d 781) (1998).

[10] *Baptiste v. State*, 190 Ga. App. 451, 453 (2) (379 SE2d 165) (1989).

[11] *Mayfield v. State*, 276 Ga. 324, 330 (2) (a) (578 SE2d 438) (2003).

[12] *Thompson v. State*, 260 Ga. App. 253, 258-259 (5) (581 SE2d 596) (2003).

[13] *Wooten v. State*, 250 Ga. App. 686, 687 (3) (552 SE2d 878) (2001).

*McGuire v. State*[14] (juror dismissed where he visited crime scene and tried during deliberations to influence other jurors to decide the case on this evidence).

In reaching its conclusion, the majority opines, without appropriate authority to do so, that, as a matter of law, offensive language during deliberations can never be the basis for a trial court to exercise its discretion to remove a juror. This ruling, however, contradicts our mandatory standard of review, and it unduly restrains the sound legal discretion of a trial court experiencing firsthand a wayward juror who contrary to court instructions is on a verbal rampage to intimidate other jurors into accepting his point of view.

*Sears v. State,*[15] cited by the majority, actually requires a finding that the trial court *did not* abuse its discretion in this case. In *Sears,* our Supreme Court held that it would *sustain* the trial court's exercise of discretion to not dismiss a juror who accused another juror of perjury; that is exactly what we should do here — *sustain* the trial court's exercise of discretion. *Sears* did *not* state that it would have reversed the trial court if it had decided otherwise. Similarly, had the trial court decided not to dismiss the offending juror here, we would have been correct in sustaining that discretionary decision and in not substituting our own judgment as to what we would have done had we been sitting in the trial judge's chair. As an appellate court reviewing a cold record, we are bound to sustain a discretionary decision regarding the dismissal of jurors so long as there is some sound basis for that decision. *Herring v. State.*[16] Berating and bullying other jurors to coerce them to come to a verdict different from that which they feel is justified by the evidence is a sound basis to dismiss that juror.

For these reasons, I would affirm the trial court's decision here and must therefore respectfully dissent.

I am authorized to state that Presiding Judge Andrews and Judge Miller join in this dissent.

DECIDED JULY 7, 2005 — ▮▮▮▮▮▮▮▮▮

*Edith M. Edwards*, for appellant.
*J. David Miller, District Attorney, James G. Threlkeld, Assistant District Attorney*, for appellee.

---

[14] *McGuire v. State*, 200 Ga. App. 509, 510 (3) (408 SE2d 506) (1991).
[15] *Sears v. State*, 270 Ga. 834, 841 (3) (b) (514 SE2d 426) (1999).
[16] *Herring v. State*, 224 Ga. App. 809, 811 (1) (481 SE2d 842) (1997).